UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

NEW YORK STATE ASSOCIATION
FOR RETARDED CHILDREN, et al.,

                  Plaintiffs,

    v.

ANDREW CUOMO, et. al.,

                  Defendants.

72 Civ. 356, 357 (JRB)

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

NEW YORK CIVIL LIBERTIES UNION
    FOUNDATION
Beth Haroules, Esq.
125 Broad Street, 19th floor
New York, NY 10004
Tel: (212) 607-3325
Fax: (212) 607-3318

KASOWITZ BENSON TORRES LLP
David J. Abrams, Esq.
Deva Roberts, Esq.
1633 Broadway
New York, New York 10019
Tel:  (212) 506-1700
Fax:  (212) 506-1800

NEW YORK LAWYERS FOR THE
PUBLIC INTEREST
Roberta Mueller, Esq.
151 West 30th Street, 11th Floor, New York,
NY 10001
Tel: (212) 244-4664
Fax: (212) 244-4570

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

Page

Table of Authorities ............................................................................................... ii

INTRODUCTION ................................................................................................... 1

FACTS .................................................................................................................... 4

    A.     The Willowbrook Litigation And The Permanent Injunction ................................. 4

    B.     Plaintiffs' Counsel's Monitoring Duties Pursuant To The Permanent Injunction .. 6

    C.     The Parties' Prior Court-Ordered Stipulations Support The Fees Sought .............. 8

ARGUMENT ........................................................................................................... 9

    A.     Plaintiffs' Counsel Are Entitled to Reasonable Attorney's Fees And Costs For Their Post-Judgment Monitoring ................................................. 9

    B.     The Hourly Rates Requested by Plaintiffs' Counsel Are Reasonable For Determining The Appropriate Lodestar .............................................. 10

            1.     The Complexity of the Willowbrook Litigation and Plaintiffs' Counsel's Expertise and Work Performed Justifies Application of Out-of-District Hourly Rates .............................................. 10

            2.     Plaintiffs' Counsel's Rates are Reasonable and in Line With the Hourly Rates of Lawyers of Commensurate Skill Working on Similarly Complex Cases. ................................................................. 15

            3.     Even if Eastern District Rates are Applied, Plaintiffs' Counsel's Rates Comport With Reasonable Hourly Rates for Lawyers Working On Complex Cases in This District ....................................... 19

    C.     The Number Of Hours Worked Are Reasonable Based On Similarly Complex Cases Litigated By Attorneys Of Comparable Skill, Experience And Reputation ....................................................................................... 20

    D.     Plaintiffs' Counsel Has Shown Good Faith By Voluntarily Reducing Their Requested Fees And Exercising Billing Judgment ............................... 23

    E.     Plaintiffs Are Entitled To Their Costs Incurred In Connection with Monitoring ..................................................................................... 23

    F.     Plaintiffs Are Entitled To Recover "Fees On Fees" For This Fee Petition .......... 24

CONCLUSION ....................................................................................................... 25

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Aiello v. Town of Brookhaven*,
2005 WL 1397202 (E.D.N.Y. June 13, 2005) ......................................................21

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany and Albany
Cty. Bd. of Elections*,
522 F.3d 182 (2d Cir. 2007).....................................................................10, 11, 16

*Barbour v. City of White Plains*,
788 F.Supp. 2d 216 (S.D.N.Y. 2011)..............................................................13, 24

*Blum v. Stenson*,
465 U.S. 886 (1984)..........................................................................................11, 17

*Castcapa Constr., LLC v. TMB Servs. Ltd. Liability Co.*,
2018 WL 623546 (E.D.N.Y. Jan. 30, 2018) ........................................................11

*Chambless v. Masters, Mates & Pilots Pension Plan*,
885 F.2d 1053 (2d Cir. 1989)................................................................................11

*Cruz v. Local Union No. 3 of IBEW*,
34 F.3d 1148 (2d Cir. 1994)..................................................................................10

*Cruz v. Zucker*,
2017 WL 1093285 (S.D.N.Y. Mar. 10, 2017) ......................................................16

*DiFilippo v. Morizio*,
759 F.2d 231 (2d Cir. 1985)..................................................................................20

*Ferrara v. CMR Contr. LLC*,
848 F. Supp. 2d 304 (E.D.N.Y. 2012) ..................................................................10

*Gaia House Mezz LLC v. State St. Bank & Tr. Co.*,
2014 WL 3955178 (S.D.N.Y. Aug. 13, 2014) ......................................................10

*Grant v. Martinez*,
973 F.2d 96 (2d Cir. 1992), *cert. denied,* 506 U.S. 1053 (1993)....................14, 20

*Hensley v. Eckerhart*,
461 U.S. 424 (1983).................................................................................15, 16, 21

*Hnot v. Willis Group Holdings Ltd.*,
2008 WL 1166309 (S.D.N.Y. Apr. 7, 2008).........................................................21

*Houston v. Cotter,*
    234 F. Supp. 3d 392 (E.D.N.Y. 2017) ...........................................................11, 20

*Rodriguez ex rel. Kelly v. McLoughlin,*
    84 F.Supp.2d 417 (S.D.N.Y.1999)..........................................................................21

*Kim v. Kum Gang, Inc.,*
    2014 WL 2514705 (S.D.N.Y. June 2, 2014) .......................................................13

*LeBlanc-Sternberg v. Fletcher,*
    143 F.3d 748 (2d Cir. 1998)...................................................................................14

*Lore v. City of Syracuse,*
    670 F.3d 127 (2d Cir. 2012)...................................................................................20

*Lundav v. City of Albany,*
    42 F.3d 131 (2d Cir. 1994)....................................................................................20

*Maldonado v. La Nueva Rampa, Inc.,*
    2012 WL 1669341 (S.D.N.Y. May 14, 2012) .....................................................20

*Martin v. Hadix,*
    527 U.S. 343 (1999)................................................................................................9

*Matusick v. Erie Cty. Water Auth.,*
    757 F.3d 31 (2d Cir. 2014)....................................................................................11

*McLaughlin v. IDT Energy,*
    2018 WL 3642627 (E.D.N.Y. July 30, 2018)....................................12, 15, 16, 19

*Miele v. New York State Teamsters Conference Pension & Ret. Fund,*
    831 F.2d 407 (2d Cir. 1987)..................................................................................11

*Millea v. Metro-North R.R. Co.,*
    658 F.3d 154 (2d Cir. 2011)..................................................................................10

*Missouri v. Jenkins,*
    491 U.S. 274 (1989)..............................................................................................14

*Morris v. Eversley,*
    343 F. Supp. 2d 234 (S.D.N.Y. 2004)...................................................................24

*New York Ass'n for Retarded Children v. Carey,*
    711 F.2d 1136 (2d Cir. 1983)......................................................................9, 15, 20

*Olmstead v. L.C.,*
    527 U.S. 581 (1999)................................................................................................4

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
    483 U.S. 711 (1987).............................................................................14

*Perdue v. Kenny A. ex rel. Winn*,
    559 U.S. 542 (2010)...........................................................................10

*Quaratino v. Tiffany & Co.*,
    166 F.3d 422 (2d Cir. 1999)...............................................................24

*Reiter v. Metro. Transit Auth.*,
    457 F.3d 224 (2d Cir. 2006)...............................................................17

*Ross v. Royal Pizza Cafe Corp.*,
    2018 WL 6313208 (E.D.N.Y. Aug. 1, 2018)......................................11

*S.E.C. v. Goren*,
    2003 WL 24257501 (E.D.N.Y. Apr. 30, 2003) ..................................21

*Shapiro v. JP Morgan Chase & Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ...................................16

*Sheehan v. Metro. Life Ins. Co.*,
    450 F. Supp. 2d 321 (S.D.N.Y. 2006)................................................14

*Simmons v. New York City Transit Authority*,
    575 F.3d 170 (2d Cir. 2009)...........................................11, 12, 15, 16

*Song v. 47 Old Country, Inc.*,
    2015 WL 10641286 (E.D.N.Y. Oct. 1, 2015)....................................20

*Thomas v. City of New York*,
    2017 WL 6033532 (E.D.N.Y. Dec. 1, 2017) ........................11, 17, 19

*United States v. City of New York*,
    2013 WL 5542459 (E.D.N.Y. August 30, 2013) ...........................19, 20

*Vecchia v. Town of North Hempstead*,
    927 F.Supp. 579 (E.D.N.Y. 1996) ................................................9, 15

**Statutes**

Prison Litigation Reform Act.........................................................................9

Pursuant to paragraph 22 of the permanent injunction entered on March 11, 1993 (the "Permanent Injunction") in the above-captioned action (the "Willowbrook Litigation"), Plaintiffs New York State Association for Retarded Children (NYSARC, Inc.) et al., ( "Plaintiffs"), respectfully submit this Memorandum of Law in support of their application for recovery of reasonable attorneys' fees and costs incurred in connection with the post-judgment monitoring and enforcement of the Permanent Injunction.[1]

## INTRODUCTION

Plaintiffs seek to recover the reasonable attorneys' fees and costs incurred by their counsel, the New York Civil Liberties Union Foundation ("the NYCLU") and New York Lawyers for the Public Interest ("NYPLI") (together, "Plaintiffs' Counsel"), in connection with their monitoring and enforcement of the relief awarded to Plaintiffs by the Permanent Injunction entered in the Willowbrook Litigation, as well as their fees incurred in this Fee Application and the fees of the law firm of Kasowitz Benson Torres LLP ("KBT"), which was retained specifically to prepare the Fee Application.[2]

As the Court is aware, the Willowbrook Litigation, commenced in 1972, was a watershed case in disability rights jurisprudence.  This class action exposed the horrific conditions under

---

[1] Plaintiffs' Counsel are entitled to request attorneys' fees and costs related to the monitoring and enforcement of the Permanent Injunction.  Paragraph 22 of the Permanent Injunction reads, in part, as follows:

> The court retains jurisdiction to enforce the provisions of the permanent injunction and for purposes of requests for attorney's fees and costs related to the monitoring and enforcement of the permanent injunction…

The parties agreed to this provision to ensure that they work together to facilitate voluntary compliance with the terms of the Permanent Injunction, rather than Plaintiffs' Counsel having to resort to repeated motions for enforcement or contempt around the variety of non-compliance issues that inevitably arise in a systemic litigation of this magnitude. *See* Declaration dated February 20, 2019 of Beth Haroules, from the NYCLU (the "Haroules Decl.") at ¶ 10.

[2] This Memorandum of Law in Support of Plaintiffs' Motion for Attorneys' Fees and Costs (the "Fee Application") is filed in conjunction with the accompanying Haroules Decl. and the declarations dated February 20, 2019 of Roberta Mueller, from NYLPI (the "Mueller Decl."), who serve as co-counsel for Plaintiffs, and of David J. Abrams, from KBT (the "Abrams Decl."), the law firm that prepared the Fee Application.

which children and adults with intellectual and developmental disabilities ("I/DD") were forced to live at the Willowbrook State Developmental Center on Staten Island. This case set important precedents for the humane and ethical treatment of people living in institutions, and served as the impetus for accelerating the pace of community placements for people with I/DD, expanding community services, increasing the quality and availability of day programs and establishing the right of children with disabilities to a public education.

The objective of the Willowbrook Litigation was to guarantee people with I/DD certain basic enumerated rights, including protection from harm; a safe, clean and appropriate physical environment; high quality community residential and treatment services in the least restrictive setting; and high quality case management and advocacy services. New York State was held accountable for its inhumane treatment of the Willowbrook class members through a series of orders entered in the Willowbrook Litigation, culminating in the 1993 Permanent Injunction.

The Permanent Injunction sets forth the scope of relief provided to Plaintiffs and the monitoring to be provided by Plaintiffs' Counsel. Rather than awarding monetary damages to some members of the class for individual harms they suffered, the Permanent Injunction provided that, for the duration of each class member's lifetime, the entire class would be entitled to community and treatment services, safe and clean living conditions, protection from harm, and ongoing monitoring, case management, and legal advocacy to ensure the successful administration of the relief provided to Plaintiffs in the Permanent Injunction and to prevent against further mistreatment. Ongoing legal advocacy for the class was one of the foundations of the relief scheme contemplated by the parties in the Permanent Injunction.

For the past 25 years, Plaintiffs' Counsel has been charged with ensuring Defendants' compliance with the Permanent Injunction. Simply stated, the unprecedented relief to class

members detailed in the Permanent Injunction could not have been carried out without the dedicated and persistent work of Plaintiffs' Counsel over the years. This work has been accomplished through an extensive monitoring and oversight structure agreed to by the parties and set forth in the Permanent Injunction. And for the past 25 years, the parties have been able to resolve any issues presented in plaintiffs' fee applications without the Court's intervention, by reaching mutually agreed settlements in the form of stipulations so-ordered by the Court.[3] All of these stipulations have been entered on the public docket in the Willowbrook Litigation.

However, for reasons still unclear and without any real explanation, in early 2018 defendants' counsel withdrew its earlier fee settlement offers to Plaintiffs' Counsel, which had been accepted, and required Plaintiffs' Counsel to move for an award of fees. Notwithstanding the Court's direction at the pre-motion conference on this matter on December 13, 2018 that the parties confer to attempt to resolve their fee disputes, Defendants' counsel refused to engage in further discussions.[4]

As a result, this Fee Application, and the fees incurred in preparing it, are the direct consequence of Defendants' sudden and unexplained decision to depart from decades of productive and efficient fee negotiations in the Willowbrook Litigation. The Fee Application covers the calendar years 2012 to date for monitoring and enforcement work performed by the NYCLU and for calendar years 2015 to date for monitoring and enforcement work performed by NYLPI. The NYCLU seeks a total recovery of its fees and costs in the amount of $3,789,386.39, NYLPI seeks a total recovery of its fees in the amount of $124,140 and KBT seeks a total recovery of its fees in the amount of $88,137.50. These amounts are fair and reasonable for the work performed, particularly

---

[3] Haroules Decl. at ¶ 16 n.20.

[4] Haroules Decl. ¶17.

given the expertise and unique institutional knowledge of each of Plaintiffs' Counsel, and their singular efforts enforcing and monitoring the Permanent Injunction, without which the Permanent Injunction would be unable to achieve its fundamental mandate of protecting Plaintiffs from harm and improving Plaintiffs' quality of life.[5]

## FACTS

### A.    The Willowbrook Litigation And The Permanent Injunction

The Permanent Injunction and the relief it mandated ushered in a new era for people with I/DD.  As summarized above and as explained more fully in the Haroules and Mueller Declarations,  the Willowbrook Litigation was extremely complex and of long duration.  The scope of relief Plaintiffs sought and obtained was unprecedented at the time.  The Permanent Injunction mandated a complete overhaul of the care system then in place for class members.

The NYCLU has represented the plaintiff class in the Willowbrook matter since the Willowbrook Litigation was commenced in 1972.  NYLPI has served as co-counsel to the class since approximately 1995.[6]  Approximately 2,200 of the original 6,000+ Willowbrook class members are still alive – the ages of the class members now range from late-40s to late-90s.  The class members live in a variety of residential settings, ranging from institutional to independent living, in all regions of New York State.  Approximately two-thirds of the class live downstate. Well before the Supreme Court's *Olmstead* decision in 1999[7], the Willowbrook consent judgment mandated that individuals with intellectual disabilities be afforded the "least restrictive and most

---

[5]  As set forth more fully in the (Haroules Decl. at ¶¶ 61-78) and (Mueller Decl. at ¶¶4, 46, 50), Plaintiffs' Counsel has staffed this action leanly at all times, has exercised billing judgment in the preparation of the Fee Application, has ensured that the time associated with the described tasks is neither excessive nor duplicative, and has excluded claims for certain costs they would have a right to collect, all in the interest of resolving this matter efficiently and without further drain on the parties and the judicial system. *See infra* Section D.

[6]  Haroules Decl. at ¶10; Mueller Decl. at ¶¶6, 10.

[7]  *Olmstead v. L.C.*, 527 U.S. 581, 587 (1999).

normal living conditions possible."[8]  This represented a seismic move away from a medical model of care to one with a robust focus on active treatment, community inclusion, and true quality of life for people with intellectual and developmental disabilities.  The Permanent Injunction superseded the 1975 Willowbrook Consent Judgment, except where specifically excepted, and left in place a robust monitoring scheme contemplating the participation of Plaintiffs' Counsel, among others.[9]

Specifically, the Permanent Injunction guarantees all class members, for the duration of their lives, high quality community residential and treatment services in the least restrictive setting,[10] protection from harm,[11] a safe, clean and appropriate physical environment,[12] and high quality case management and advocacy services.[13]  Willowbrook class members, as well as Plaintiffs' Counsel and the class members' advocates, are entitled to certain levels of notice, or due process, with respect to community placements and programming.[14]  Willowbrook class members are entitled to voice grievances;[15] incident reporting and review and to assure the high quality nature of their community residential and treatment services; quality control audits and certification of residential and habilitative services for compliance with all applicable federal, state, and local regulations.[16]  These protections, and others, have been effectuated through the robust advocacy of Plaintiffs' Counsel over the years.

---

[8]  Permanent Injunction at ¶¶ 10, 12, 16.

[9]  *Id.* at ¶¶ 5(d), 7, 19, 21, and Appendices H and D.

[10]  *Id.* at ¶¶ 10, 12, 16).

[11]  *Id.* at ¶ 11.

[12]  *Id.* at ¶ 11.

[13]  *Id.* at ¶¶ 7, 8, 16.

[14]  *Id.* at ¶¶ 5, 6, 15.

[15]  *Id.* at ¶¶ 10, 15, 21.

[16]  *Id.* at ¶¶ 10, 21.

**B.      Plaintiffs' Counsel's Monitoring Duties Pursuant To The Permanent Injunction**

Plaintiffs' Counsel has been instrumental in effecting the aims of the Permanent Injunction. Primary tasks for which Plaintiffs' Counsel are responsible, and on which Plaintiffs' Counsel have worked and continue to work, include monitoring and advancing the systemic issues identified in the Permanent Injunction, including vocational and day programming for Plaintiffs, medical services, respite care, behavior management, case management, residential and integrative services, and incident review.

With respect to the performance of tasks by Plaintiffs' Counsel, the NYCLU and NYLPI have separate assignments as well as joint tasks which are integrated and intended to advance counsel's overall monitoring and enforcement litigation strategy objectives, without being duplicative. In very broad strokes, NYLPI takes the lead role on due process notices relating to programmatic movements undertaken with respect to Willowbrook Class members and receives and reviews all notices of death. The NYCLU addresses protection from harm issues in connection with its receipt of all incident reports relating to Willowbrook Class members and other sources of information indicating a lack of protection from harm. The NYCLU generally takes the lead on guardianship matters, end of life issues, medical consent issues and research initiatives relating to the Willowbrook class.[17] The NYCLU generally also takes the lead in assessing requests for expansion of residential program settings serving Willowbrook class members, as well as in providing testimony and comments on various regulatory initiatives, legislative enactments and programmatic initiatives issued by New York State Department of Health ("DOH") and/or the Office for People with Developmental Disabilities ("OPWDD"), where public comment from the

---

[17] In the past, both NYLPI and the NYCLU have entered appearances and appeared in court in connection with guardianships and end-of-life issues, and defendant has never objected to paying fees to both offices to handle these matters. In the interest of efficiency, NYLPI has ceded responsibility for these matters to the NYCLU, although NYLPI provides backup consultation in individual cases. Mueller Decl. at ¶¶48.

Willowbrook parties is sought and/or encouraged. The NYCLU and NYLPI have historically coordinated both with defendants and their counsel, including counsel at both the Office of the New York State Attorney General and at OPWDD, on the allocation of tasks between Plaintiffs' Counsel. Haroules Decl. at ¶ 21; Mueller Decl. at ¶16.

Relatively few, if any, legal organizations and attorneys in New York possess the expertise needed to handle the complex disability rights at issue in the Willowbrook Litigation, and to monitor and implement the multifaceted protections awarded to Plaintiffs by the Permanent Injunction. Successful implementation and monitoring of the hard-earned relief provided in the Permanent Injunction requires a sophisticated understanding of modern-day disability law and policy concerns, as well as intensive knowledge of the complicated procedural history of the decades-long Willowbrook Litigation. Here, Plaintiffs' Counsel possess the requisite legal knowledge and unique factual familiarity, resulting from decades of work on the Willowbrook Litigation, needed to efficiently perform their duties under the injunction. Defendants have never contended otherwise.

As noted, the NYCLU has represented Plaintiffs since the commencement of the Willowbrook Litigation, in 1972. Haroules Decl. at ¶ 10. Beth Haroules, an attorney at the NYCLU, has been the lead attorney for the Willowbrook Litigation since October of 1994. *Id.* at ¶ 65. Lisa Laplace, another attorney at the NYCLU, has been deeply involved in the Willowbrook Litigation since 2005. *Id.* at ¶ 67. Ms. Haroules and Ms. Laplace have forged collegial working relationships with Defendants' counsel and management personnel at the OAG and OPWDD. *Id.* at ¶ 64. Indeed, these working relationships have historically paved the way for swift resolution of the various issues that have arisen in administering the Permanent Injunction (and, until now, have helped the parties settle all prior requests for attorneys' fees without burdening the judicial system).

*Id.* Ms. Haroules and Ms. Laplace are highly regarded in the civil rights community in New York and have developed a large network of advantageous relationships through their work representing people with disabilities in other prominent cases. *Id.*

NYLPI has acted as co-counsel with the NYCLU on the Willowbrook Litigation since 1995. Haroules Decl. at ¶ 10. NYLPI seeks fees for work performed by Roberta Mueller, the lead NYLPI attorney on the case since 2001, and Suhali Mendez, an advocate and paralegal who assisted Ms. Mueller in her monitoring and enforcement work in 2015 and 2016.[18] *See* Mueller Decl. at ¶ 6. Ms. Mueller's decades of experience working on the Willowbrook Litigation, her long-standing relationships with defendant's counsel and management personnel and her extensive professional background in guardianship proceedings and disability rights advocacy, spanning nearly thirty-five years, are of immeasurable benefit in the monitoring and enforcement work Plaintiffs' Counsel is charged with executing. *See* Mueller Decl. at ¶ 52. Plaintiffs' Counsel repeatedly utilize their unique relationships in the disability law arena to accomplish the aims of the Permanent Injunction.

**C.      The Parties' Prior Court-Ordered Stipulations Support The Fees Sought**

Since 1993, Plaintiffs' Counsel have sought -- and Defendants have paid them -- their reasonable attorney's fees and costs as well as expenses. The parties' prior course of dealing over the past 25 years, their resolution of fee submissions, and the court-ordered fee stipulations publicly filed over the years fully support the fees sought by this motion. For decades, Defendants recognized their payment obligations, and the parties had little difficulty resolving the payment of attorneys' fees without requiring involvement of the court in determining Plaintiffs' Counsel's fees for post-judgment monitoring work. These settlements, as approved by Defendants each time,

---

[18] NYLPI only seeks fees for Ms. Mendez's work for the years 2015 and 2016. During 2017 and 2018, Ms. Mueller received most of the notices and reports she was required to review via direct, electronic copy. *See* Mueller Decl. at ¶ at 50.

recognized the sophisticated knowledge, skills and dedication that Plaintiffs' Counsel demonstrated in their monitoring responsibilities. Moreover, throughout the years, by so-ordering each stipulation reached by the parties regarding Plaintiffs' Counsel's costs and fees, this Court has accepted that the fees to be awarded to Plaintiffs' Counsel, as negotiated and approved by the parties, were in each case reasonable and commensurate with the critical post-judgment work they performed.

## ARGUMENT

### A.    Plaintiffs' Counsel Are Entitled to Reasonable Attorney's Fees And Costs For Their Post-Judgment Monitoring

It is well-established in the Second Circuit, both generally and in the Willowbrook Litigation, that prevailing civil rights plaintiffs are entitled to reasonable attorneys' fees for post-judgment monitoring. *See New York Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1145 (2d Cir. 1983); *see also Martin v. Hadix*, 527 U.S. 343 (1999) (awarding attorneys' fees for post-judgment monitoring services performed after the effective date of the Prison Litigation Reform Act); *Vecchia v. Town of North Hempstead*, 927 F.Supp. 579, 581 (E.D.N.Y. 1996) ("Services rendered in monitoring compliance under a consent decree are reimbursable."). Here, the Permanent Injunction specifically provides in paragraph 22 that the Court retains jurisdiction over applications for post-judgment monitoring fees and defendants have never contended otherwise.

As discussed below, the lodestar amount for attorney's fees and costs requested by the NYCLU and NYLPI for their monitoring activities in the period covered by their respective requests is entirely appropriate, based on the reasonable (although slightly different) hourly rates of the NYCLU and NYLPI and the reasonable number of hours performed by each Plaintiffs' Counsel for their respective tasks in the relevant periods.

**B.** **The Hourly Rates Requested By Plaintiffs' Counsel Are Reasonable For Determining The Appropriate Lodestar**

The starting point for determining the presumptively reasonable fee award is the "lodestar" amount, which is "'the product of a reasonable hourly rate and the reasonable number of hours required by the case.'" *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see, e.g.*, *Gaia House Mezz LLC v. State St. Bank & Tr. Co.,* 2014 WL 3955178, at *1 (S.D.N.Y. Aug. 13, 2014). Because the lodestar calculation requires an analysis of the number of fair and reasonable hours billed, as well as a reasonable billable hourly rate, the lodestar amount is regarded as reasonable compensation. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)("[T]he lodestar method yields a fee that is presumptively sufficient to achieve this objective [of securing attorneys to take on civil rights cases.]"); *see also Millea*, 658 F.3d at 166 ("Both this Court and the Supreme Court have held that the lodestar-the product of a reasonable hourly rate and the reasonable number of hours required by the case-creates a 'presumptively reasonable fee.'"); *Ferrara v. CMR Contr. LLC*, 848 F. Supp. 2d 304, 313 (E.D.N.Y. 2012) (same).

1. **The Complexity of the Willowbrook Litigation and Plaintiffs' Counsel's Expertise and Work Performed Justifies Application of Out-of-District Hourly Rates**

In determining the appropriate lodestar, a reasonable hourly rate is the rate a private, paying client would be willing to pay for the legal services. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany and Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2007). Reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Local Union No. 3 of IBEW*, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

Accordingly, the first step in determining the prevailing market rate is to assess what lawyers of comparable skill and experience handling other complex litigation charge their private clients, as "the rates charged in private representations may afford relevant comparisons." *Blum,* 465 U.S, at 895, n.11; *see also Miele v. New York State Teamsters Conference Pension & Ret. Fund,* 831 F.2d 407, 409 (2d Cir. 1987). Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community. *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1059 (2d Cir. 1989).[19]

The relevant "community" is generally considered to be the district where the court sits. *See Arbor Hill*, 522 F.3d at 190. However, the Second Circuit permits district courts to use higher out-of-district rates (or an intermediate rate between the higher out-of-district rate sought and the rates charged by in-district attorneys) "if it is clear that a reasonable, paying client would have paid those higher rates." *Id.* at 191. *See also Simmons v. New York City Transit Authority*, 575 F.3d 170, 173-4 (2d Cir. 2009) (court must consider whether "reasonable client would have selected out-of-district counsel because doing so would likely…produce a substantially better net result" and whether "the case is of such nature as to benefit from special expertise); *Castcapa Constr., LLC v. TMB Servs. Ltd. Liability Co.*, 2018 WL 623546, at *2 (E.D.N.Y. Jan. 30, 2018)

---

[19] Moreover, in determining the reasonable hourly rates, the Court must "bear in mind *all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant" including the nature and complexity of the case, the quality of counsel's representation, and the outcome achieved. *Ross v. Royal Pizza Cafe Corp.*, 2018 WL 6313208, at *6 (E.D.N.Y. Aug. 1, 2018); *Thomas v. City of New York*, 2017 WL 6033532, at *2 (E.D.N.Y. Dec. 1, 2017). "[T]he range of 'reasonable' attorney fee rates in this district varies depending on the type of case, the nature of the litigation, the size of the firm, and the expertise of its attorneys." *Houston v. Cotter*, 234 F. Supp. 3d 392, 402 (E.D.N.Y. 2017) (internal quotations omitted). With the recognition that there are few, if any, cases of appropriate comparison here, this Court has broad discretion and can rely on its own understanding in deciding the reasonable hourly rate for Plaintiffs' Counsel. *Matusick v. Erie Cty. Water Auth.,* 757 F.3d 31, 64 (2d Cir. 2014) (a district court has "considerable discretion in determining what constitutes reasonable attorneys' fees in a given case, mindful of the court's superior understanding of the litigation").

(quoting *Simmons*); *McLaughlin v. IDT Energy*, 2018 WL 3642627, at *16 (E.D.N.Y. July 30, 2018) (quoting *Arbor Hill*);

Here, the declarations submitted by the NYCLU and NYLPI in support of this motion rebut the presumptive application of E.D.N.Y. rates, in favor of rates awarded in analogous S.D.N.Y. cases. It would be difficult, if not impossible, to find a law firm or group of lawyers practicing solely within the Eastern District with the combination of constitutional expertise, monitoring experience, and resources to have prosecuted a disability law case as complex and demanding as this action, and to have continued to monitor the Permanent Injunction for so long with such skill and expertise.[20] Indeed, no law firm or public interest organization would be able to effectively come into this case at this stage of the monitoring process. A reasonable client would select counsel experienced in highly complex disability law class actions to prosecute their claims, and monitor enforcement post-judgment, because doing so would likely produce a substantially better net result, even if the bulk of counsel's practice is out-of-district. *See Simmon*s, 575 F.3d at 175. Accordingly, Southern District rates awarded in complex civil rights and related actions are the most appropriate examples in determining the rates to be awarded to similarly-skilled attorneys doing equally complex work.

For Plaintiffs' Counsel, the most senior of whom have approximately three decades of relevant experience, including many years (even decades) of work on this complex impact litigation, the hourly rates requested are well within the range of hourly rates awarded in Southern District cases. Indeed, civil rights lawyers with *less experience* than Ms. Haroules and Ms.

---

[20] Most of the attorneys associated with the Willowbrook Litigation over the course of the 1970s and 1980s, including, for example, the Legal Aid Society, Paul Weiss Rifkind and the United States Department of Justice, dropped away from any ongoing monitoring work in the case. Haroules Decl. at ¶ 10. Other than the NYCLU and NYLPI, no other organization has emerged that is willing to undertake the monitoring and enforcement of the Permanent Injunction. Here, Plaintiffs' Counsel are legally and ethically obligated to continue to represent the Willowbrook class members through the life of the last class member. *Id.*

Mueller have been awarded fees between $600 and $650 per hour for cases brought in the

Southern District.  For example, in *Mawere v. Citco Fund Services (USA) Inc*., the Magistrate

Judge recommended that an attorney with 32 years of experience in defending employers be

awarded an hourly rate of $650 in a civil rights case.  2011 WL 6779319, at *5 (S.D.N.Y. Sept. 16,

2011); *report and recommendation adopted*, 2011 WL 6780909 (S.D.N.Y. Dec. 27, 2011).  That

same year, in *Barbour v. City of White Plains*, 788 F.Supp. 2d 216, 225 (S.D.N.Y. 2011) the court

awarded $625 an hour to a civil rights litigator with less than 30 years' experience.  In addition, in

*Rozell v. Ross- Holst*, two experienced civil rights attorneys with qualifications similar to those of

Ms. Haroules and Ms. Mueller were awarded hourly rates of $600.  576 F. Supp. 2d 527, 546

(S.D.N.Y. 2008); *see also Kim v. Kum Gang, Inc.*, 2014 WL 2514705 at *2 (S.D.N.Y. June 2,

2014) (awarding $600 per hour to experienced litigator).

 Here, the NYCLU seeks recovery for the work of Ms. Haroules, formerly of White & Case

LLP and the lead attorney in the Willowbrook Litigation since 1994, at an hourly rate of $600, and

for Ms. Laplace, formerly of Sullivan & Cromwell LLP and Paul Hastings LLP and who has

worked on the case since 2005, at a $525 hourly rate.  Haroules Decl. ¶ 69.  Their vast in-depth

knowledge cannot be replaced by the work of a more junior attorney who would require extensive

training to get up-to-speed on such a vast case with such a lengthy history.  *Id*. at ¶ 66.  The same

is true of Ms. Mueller at NYLPI, who possesses extensive experience in disability rights advocacy,

health law, monitoring, and complex litigation spanning a thirty-four year legal career, and who

has been the lead NYLPI attorney on the Willowbrook Litigation since 2001.  *See* Mueller Decl. at

¶ 52.  NYLPI seeks recovery for the work of Ms. Mueller at a $550 hourly rate; and for Ms.

Mendez, an experienced paralegal and the sole support for Ms. Mueller, at a $150 hourly rate.  *See*

*id.* at ¶ 72.[21]  NYLPI does not bill for any tasks performed by Ms. Mendez that are clerical in

nature or otherwise not compensable (Mueller Decl. at ¶ 57), and the requested hourly rate of $150

for Ms. Mendez is reasonable under the law.  *See e.g.*, *Sheehan v. Metro. Life Ins. Co.,* 450 F.

Supp. 2d 321, 328 (S.D.N.Y. 2006) ($150 deemed a reasonable hourly rate for paralegal).  Thus,

the rates sought herein are reasonable, and if anything, below what is considered the market rate in

the most comparable Southern District fee award cases.[22]

       The current hourly rates for each attorney and paralegal were used as the reasonable hourly

rates for the entire time period covered by this fee application.  In line with the Supreme Court, the

Second Circuit authorizes use of an attorney's current hourly rate to account for lost interest and

inflation (*Missouri v. Jenkins,* 491 U.S. 274, 283-84 (1989)), and in recognition of the fact that the

attorney are not paid promptly.  *See Pennsylvania v. Delaware Valley Citizens' Council for Clean

Air*, 483 U.S. 711, 716 (1987); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998).

Moreover, in protracted litigations such as the one at bar, the Second Circuit allows attorneys to be

compensated at "whatever rate is necessary to compensate counsel [for delay in payment]." *Grant

v. Martinez,* 973 F.2d 96, 100 (2d Cir. 1992), *cert. denied,* 506 U.S. 1053 (1993).  *Grant* relied on

*Jenkins*, in which the Supreme Court held that the district court has discretion to make "an

appropriate adjustment for delay in payment—whether by the application of current rather

than historic hourly rates or otherwise." *Jenkins*, 491 U.S. at 284.

---

[21]  It bears mentioning that Plaintiffs' Counsel's knowledge of the case is invaluable and beneficial to *all parties* involved, including Defendants, because such expertise maximizes efficiency and cuts the costs of administering the relief provided for in the Permanent Injunction -- costs ultimately passed onto the tax payer.

[22]  The highest hourly rate sought by NYLPI ($550/hour) is lower than that sought by NYCLU ($600/hour) for several reasons, but the rates sought by both organizations are still well within the range of reasonableness as discussed above. NYCLU has had a lengthier experience in this litigation, including the monitoring phase.  In addition, NYLPI's fees have been historically lower than those of NYCLU in contemplation of the fact that NYLPI has historically been able to settle its fee requests relatively quickly through negotiations.

The complexities of the enforcement and monitoring of the Permanent Injunction as set forth in the declarations submitted herewith more than satisfy the hourly rate standard set forth by the Second Circuit in *Simmons* – a reasonable paying client would pay Southern District rates to retain the attorneys in question, who each possess exceptional familiarity with the case and vast experience in disability law. Additionally, Plaintiffs' Counsel all work out of offices in Manhattan and have performed complex work on other civil rights cases in the Eastern District, which further demonstrates that a reasonable paying client would pay higher out-of-district rates for the work in question. *See, e.g.* Haroules Decl. ¶¶ 61-64. Considering Plaintiffs' Counsel's decades of experience with disability law, it is "clear that a reasonable, paying client would have paid those higher rates" to obtain the services of Plaintiffs' Counsel for their monitoring work. *See McLaughlin*, 2018 WL 3642627, at *16 .[23]

Accordingly, Plaintiffs' Counsel are entitled to Southern District billing rates, at a minimum, consistent with the rates sought herein.

2.  **Plaintiffs' Counsel's Rates are Reasonable and in Line With the Hourly Rates of Lawyers of Commensurate Skill Working on Similarly Complex Cases.**

Fees for attorneys working on matters in the public interest are "governed by the same standards which prevail in other types of equally complex federal litigation . . . ." *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.4 (1983).[24] Thus, the reasonableness of Plaintiffs' Counsel's

---

[23] There is no question that the categories of monitoring work set forth in the Haroules and Mueller Declarations reflect work that the court in this case and courts in the Second Circuit deem reasonably necessary and appropriate to ensure compliance with the Permanent Injunction and critical to the vindication of the plaintiffs' rights thereunder. *See New York Ass'n for Retarded Children v. Carey*, 711 F.2d 1136 (2d Cir. 1983). *See also Vecchia*, 927 F.Supp. at 581 ("[i]t is within the sound discretion of the district court to grant an award for services performed that are 'useful and of a type ordinarily necessary' to secure the final result obtained from litigation to enforce civil rights.").

[24] The rule that the reasonable hourly rate for high quality, complex public interest work should be the same as the reasonable hourly rate for equally challenging commercial work was established in *Hensley*, and continues to be implemented through the present. 461 U.S. at 433. In *Hensley*, the Supreme Court makes clear that legislative intent driving the enactment of public interest statutes is to ensure that attorneys "view civil rights cases as essentially equivalent to other types of work they could do, even though the monetary recoveries in civil rights cases (and hence the funds out of which their clients would pay legal fees) would seldom be equivalent to recoveries in most private-law

hourly rates in this action should be determined by reference to the rates charged by New York attorneys with commensurate skill, experience, and reputation in handling complex federal class action litigation.[25]  In New York, courts have held that the reasonable hourly rates charged in complex commercial cases are equally appropriate in complex public interest cases, especially when the public interest case in question is a complex civil rights class action like the one at bar. *See Cruz v. Zucker*, 2017 WL 1093285, at *3 (S.D.N.Y. Mar. 10, 2017) ("expertise as class action litigators . . . warrants an increase to their rates" irrespective of the fact that the specific class action involved civil rights instead of commercial claims).  As New York courts consistently note, "complex class actions . . . are notoriously difficult to litigate." *Shapiro v. JP Morgan Chase & Co.*, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014).

Courts in this district similarly compensate attorneys who work for years on large-scale public interest class actions, reasoning that it is critical that courts "compensate counsel appropriate[ly] so as to encourage class actions."  *McLaughlin* 2018 WL 3642627, at *19 (finding $500 and $550 hourly rates reasonable, respectively, for partners with more than fifteen years of experience and partners with more than thirty years of experience).

Moreover, the 'reasonable rates' for Plaintiffs' Counsel's work in the case at bar should not be compared against standard public interest cases, but instead should be compared to other complex actions and complex public interest cases in the relevant market, and be based on the reasonable hourly rate a "paying client would be willing to pay" for those services.  *See Arbor Hill*, 522 F.3d at 182; *Simmons*, 575 F.3d at 174.  Public interest attorneys often under-charge or do not

---

litigation."  *Hensley*, 461 U.S. at 430 n.4.  Therefore, fees awarded in public interest litigation  should result in attorneys' fees awards "equivalent to fees 'in other types of equally complex Federal litigation, such as antitrust cases, and not be reduced because the rights involved may be nonpecuniary in nature.'" *Id*. (emphasis added and citations omitted).

[25] Plaintiffs' Counsel are not aware of any authority suggesting that post-judgment monitoring and enforcement work on a complex class action should be compensated differently than any other legal work performed in such cases.

charge their clients in the interest of advancing complex, but possibly risky, cases of systemic reform; by looking to commercial market rates as the bright line for reasonableness, courts can more accurately compensate this crucial legal work. *See Reiter v. Metro. Transit Auth.*, 457 F.3d 224, 232-33 (2d Cir. 2006); *Blum*, 465 U.S. at 894-95 (reasonable fees calculated according to prevailing market rates regardless of whether plaintiff is represented by nonprofit counsel). Thus, a court must initially determine what lawyers of comparable skill and experience handling other complex litigation charge their private clients, as "the rates charged in private representations may afford relevant comparisons." *See Blum,* 465 U.S, at 895 n.11.

Plaintiffs' Counsel's requested rates – at a maximum, $600/hour for attorneys with over three decades of experience – are well within the lower range of complex federal civil litigation market rates for attorneys who possess Plaintiffs' Counsel's level of expertise. In *In re AOL Time Warner S'holder Derivative Litig.*, a complex corporate derivative action decided *nine years ago*, the Southern District awarded fees based on hourly rates up to $850 per hour for partners and $550 for associates in 2010; critically here, the court in *AOL* noted that annual hourly increases of $25 to $50 are common. 2010 WL 363113, at *13, 20 (S.D.N.Y. Feb. 1, 2010); *see also Thomas*, 2017 WL 6033532, at *2 ($550 reasonable hourly rate for work on a complicated class action by attorneys with "more than thirty years of experience" and $500 a reasonable hourly rate for attorneys with over fifteen years of experience).

Here, two of the attorneys seeking fees each possess over thirty years of experience and the third attorney has twenty years of experience, which is *five more years* of work experience than the fifteen years deemed worthy of a $500 rate by this court in *Thomas*. Plaintiffs' Counsel's lengthy legal careers, deep familiarity with the case, expertise in disability law, and singular talent in ensuring that the complex relief procedures called for by the Permanent Injunction are properly

implemented amply support the hourly rates sought here.  On an almost daily basis, Plaintiffs'

Counsel perform sophisticated, detailed, extensive work monitoring and enforcing the terms of the

Permanent Injunction.  Not only are Plaintiffs' Counsel's responsibilities of the utmost importance

-- quite literally, they are responsible for ensuring that Plaintiffs continue to obtain the relief to

which they are legally entitled -- but the tasks associated with monitoring and enforcing the

injunction are highly involved and time-consuming and entirely consistent with the monitoring

activities that Defendants have previously compensated without challenge.

For example, Plaintiffs' Counsel regularly review and analyze numerous complex reports –

reports specific to the wellbeing and treatment of individual class members; reports on the success

of the institutional programs that Plaintiffs' Counsel is charged with monitoring (*See* Mueller Decl.

at ¶ 30); reports from OPWDD, other state agencies and federal and state lawmakers regarding

proposed regulations and larger policy concerns for class members.  Additionally, Plaintiffs'

Counsel handle all due process notices, notices of death, guardianship and consent issues for class

members, and facilitate the relocation of class members when needed.  *See* Mueller Decl. at ¶¶ 18,

40.  Plaintiffs' Counsel also engage in frequent, often daily, communications with advocates and

the family members and caretakers of class members, as well as relevant administrative officials

and other professionals to ensure the relief awarded in the Permanent Injunction is successfully

delivered.  *See* Haroules Decl. at ¶¶ 24-30; Mueller Decl. at ¶ 21.

Plaintiffs' Counsel's novel and unusual role in this case speaks to the depth and breadth of

the relief granted by the Willowbrook Litigation and the rare attorney capable of monitoring and

enforcing the Permanent Injunction.  Bearing in mind the complexity of this case, the work

experience of the attorneys and the varied and extensive monitoring and enforcement duties central

to this Fee Petition, Plaintiffs' Counsel's application seeks what are, if anything, below-market hourly rates in calculating the proposed fee award in the hope of resolving this matter.

### 3. Even if Eastern District Rates are Applied, Plaintiffs' Counsel's Rates Comport With Reasonable Hourly Rates for Lawyers Working on Complex Cases in This District

If the Court determines, however, that in-district rates should govern its analysis, it should take into account that Courts in this district have in recent years increased attorneys' fees awards for experienced civil rights counsel. As a result, present-day Eastern District rates for complex civil rights class action work are mostly commensurate with the hourly rates Plaintiffs' Counsel now seeks based on Southern District rates. As noted above, most recently, in *McLaughlin*, this court held that a $550 hourly rate was reasonable for an attorney with more than thirty years of experience working on a complex class action, and that a $500 hourly rate was proper for an attorney with fifteen years of experience on the same case. 2018 WL 3642627, at *19. In another recent case, *Thomas*, discussed *supra*, the court held that $550 per hour was a reasonable rate for work performed on a complicated class action by sophisticated attorneys with "more than thirty years of experience," and that $500 was a reasonable hourly rate for sophisticated attorneys with over fifteen years of experience. 2017 WL 6033532, at *2. In addition, in *United States v. City of New York* -- a case decided five years ago and, thus, certainly not reflective of the higher, present-day market rate -- this court found that a reasonable hourly rate for experienced civil rights counsel was $550 per hour. 2013 WL 5542459, at *8 (E.D.N.Y. August 30, 2013).

Here, Ms. Haroules and Ms. Mueller each possess over thirty years of experience, and would certainly be deemed worthy of the hourly rates applied to attorneys with thirty years of experience in *Thomas*, *McLaughlin*, and *City of New York*. Additionally, Ms. Laplace possesses over twenty years of experience and is entitled to an hourly rate in excess of the $500 hourly rate

that this court found reasonable for an associate with only *fifteen* years of experience five years

ago. *See United States v. City of New York,* 2013 WL 5542459, *8 (E.D.N.Y. August 30, 2013).

**C.     The Number Of Hours Worked Are Reasonable Based On Similarly Complex Cases Litigated By Attorneys Of Comparable Skill, Experience And Reputation**

The Second Circuit consistently holds that "calculating reasonable hours expended is best

made by the district court on the basis of its own assessment of what is appropriate for the scope

and complexity of the particular litigation." *Carey,* 711 F.2d at 1146; *see also Lore v. City of*

*Syracuse*, 670 F.3d 127, 175 (2d Cir. 2012) (holding that "the district court, which is intimately

familiar with the nuances of the case," is in the best position to determine an appropriate fees

award). "In making this examination, the district court does not play the role of an uninformed

arbiter but may look to its own familiarity with the case and its experience generally as well as to

the evidentiary submissions and arguments of the parties." *DiFilippo v. Morizio*, 759 F.2d 231,

235–36 (2d Cir. 1985); *see, e.g. Houston v. Cotter*, 234 F. Supp. 3d 392, 406 (E.D.N.Y. 2017).

To determine the reasonableness of the hours spent on the litigation, the court must make

"a conscientious and detailed inquiry into the validity of the representations that a certain number

of hours were usefully and reasonably expended." *Lundav v. City of Albany*, 42 F.3d 131, 134 (2d

Cir. 1994); *see also Maldonado v. La Nueva Rampa, Inc.*, 2012 WL 1669341, at *13 (S.D.N.Y.

May 14, 2012). The "critical inquiry is 'whether, at the time the work was performed, a reasonable

attorney would have engaged in similar time expenditures.'" *Grant*, 973 F.2d at 99. In conducting

its analysis, a district court must examine the hours expended by counsel and the value of the work

product of the particular expenditures to the client's case. *DiFilippo*, 759 F.2d at 235-36. In

support of the hours claimed on an application for attorneys' fees, counsel must submit "accurate,

detailed, and contemporaneous time records" with respect to the work performed. *See Song v. 47*

*Old Country, Inc.*, 2015 WL 10641286, at *4 (E.D.N.Y. Oct. 1, 2015), *report and recommendation*

*adopted*, 2016 WL 1425811 (E.D.N.Y. Mar. 31, 2016) (noting that these records do not have to

contain "great detail so long as they identify the general subject matter of time expenditures").

Plaintiffs' Counsel seek compensation strictly for time reasonably expended in connection

with the mandated enforcement and monitoring under the Preliminary Injunction.  Here, the time

records submitted in support of this request for fees are both contemporaneous and provide

sufficient detail to indicate the work performed.  Plaintiffs' Counsel have submitted detailed

invoices and billing records, which reflect the date, the tasks performed and the amount of time

spent on the tasks.  Haroules Decl, ¶¶ 70-72, Exhs. D through S; Mueller Decl. Exhs. C through J.

Plaintiffs' Counsel working on enforcement and monitoring activities utilize their involvement in

the most efficient manner possible. Haroules Decl. at ¶¶ 19-22, 66, 75; Mueller Decl. at ¶ 56.[26]

Additionally, Plaintiffs' Counsel has not billed for any time performing clerical work nor for any

support assistance in the Willowbrook Litigation, with the exception of seeking fees for Ms.

Mendez's substantive paralegal work, as detailed above.  Haroules Decl. at ¶ 74; Mueller Decl. at

¶¶ 45, 51-52.

Moreover, the time records fairly and accurately represent the substantial number of hours

Plaintiffs' Counsel have spent on this case for the requested time periods, and do not include work

beyond the normal quantity of hours required to monitor and enforce compliance.  Here, the total

---

[26] Counsel for Defendants have in the past raised objections to "block billing" by the NYCLU on this matter.
However, the practice of block billing is expressly permitted in the Second Circuit.  *See Rodriguez ex rel. Kelly v.
McLoughlin*, 84 F.Supp. 2d 417, 425 (S.D.N.Y. 1999); *see e.g.*, *Aiello v. Town of Brookhaven*, 2005 WL 1397202 at
*3 (E.D.N.Y. June 13, 2005).  A fee applicant "need not "record in great detail how each minute of his time was
expended [b]ut at least ... should identify the general subject matter of his time expenditures." *Hensley v. Eckerhart*,
461 U.S. 424, 437 & n. 12, 103 S.Ct. 1933, 1941 & n. 12 (1983).  *Accord, e.g., S.E.C. v. Goren*, 2003 WL 24257501 at
*6 (E.D.N.Y. Apr. 30, 2003).  Courts order reduction of fees sought for block billing when there is evidence that the
hours billed were independently unreasonable or that counsel intermingled non-compensable tasks with compensable
ones in billing records. *See e.g.*, *Hnot v. Willis Grp. Holdings Ltd.*, 2008 WL 1166309, at *6 (S.D.N.Y. Apr. 7, 2008).
As demonstrated in this section, the NYCLU's time records more than meet the standards espoused by the governing
case law, as all of its time entries were detailed, made contemporaneously with the work performed, and all entries
reflected tasks directly related to monitoring and enforcing the Permanent Injunction.

number of hours performed by Plaintiffs' Counsel is entirely reasonable given Plaintiffs' Counsel's requisite duties in connection with the extensive monitoring and oversight structure established to ensure Defendants' compliance with the Court's orders in the Willowbrook Litigation.  Mueller Decl. at ¶ 15, Haroules Decl. at ¶ 20.

In addition, much of OPWDD's supervisory-level workforce has emerged from the crucible of the Willowbrook Litigation.  Haroules Decl. at ¶ 24.  That workforce was steeped in thirty years of accumulated knowledge about both the Willowbrook Litigation and the formation and development of OPWDD as an agency.  *Id*.  The impact on the agency of the accelerating waves of retirement of OPWDD workforce – from the top echelons of OPWDD's Central Office to the direct care staff toiling hands-on on behalf of the individuals served by OPWDD – has been significant.  *Id*.  These retirements have eliminated highly experienced and knowledgeable staff.

Most critically, over the past seven years, the waves of retirements have been accelerating against the backdrop of New York State's rollout of a Medicaid managed long term supports and services care system.  Haroules Decl. at ¶ 25.  New York State Department of Health and OPWDD have negotiated a "rate rationalization" system with the federal Centers for Medicaid Services.  *Id*. "Rate rationalization" and the uncertain rollout of the Medicaid managed care system have fundamentally destabilized a human services delivery system plunging it into increasing disarray and turmoil.[27]  *Id*.  As a result, Plaintiffs' Counsel are repeatedly called upon to educate new state employees and private provider agencies on issues relating to the Willowbrook entitlements and Plaintiffs' compliance rights by defendants and its multitude of agents.  *Id*. at ¶ 25.  Plaintiffs'

---

[27] NYSARC has submitted important testimony before the Joint Legislative Hearing of the Senate Finance and Assembly Ways and Means Committees on the FY 2016-17 NYS Budget in February 2016 and on the FY 2019-20 NYS Budget in February 2019, detailing the continuing deterioration in services being provided to people with I/DD as a result of federally mandated rate rationalization, which has created incentives to operate less, not more, efficiently. Haroules Decl. ¶ 25 n. 24.

Counsel have also been invited to comment on and/or craft regulatory and programmatic initiatives that are vital to OPWDD. *Id*. at ¶¶ 19, 29, 52-54.

As a result, the reasonableness of the hours performed by Plaintiffs' Counsel in connection with their extensive monitoring efforts and results cannot be credibly questioned.

**D.      Plaintiffs' Counsel Has Shown Good Faith By Voluntarily Reducing Their Requested Fees And Exercising Billing Judgment**

In an effort to reach an expedient resolution of the issues underlying this petition, this Fee Petition does not seek the maximum amount of attorneys' fees or use the highest "reasonable rate" to which Plaintiffs' Counsel would be entitled for the work performed.  Additionally, Plaintiffs' Counsel has always leanly staffed the Willowbrook Litigation.  "In the exercise of billing judgment, plaintiffs are requesting monitoring and enforcement fees only for the work undertaken by the two principal lawyers from the NYCLU."  Haroules Decl. at ¶ 68.  NYLPI is seeking fees for a single attorney, Roberta Mueller, and one paralegal, Ms. Mendez, and has also elected not to account for hours spent doing non-substantive work (although such hours are certainly a necessary part of accomplishing the aims of the Permanent Injunction).  Mueller Decl. at ¶ 51.  Further, Plaintiffs' Counsel is not including any time spent on clerical or administrative matters and is excluding local travel time from its fee calculations and supervisory work by NYLPI's Legal Director.  Haroules Decl. at ¶ 69; Mueller Decl. at ¶ 55.

**E.      Plaintiffs Are Entitled To Their Costs Incurred In Connection With Monitoring**

The NYCLU also hereby request costs in the amount of $3,985.70.  Costs sought include conference call costs, Federal Express and/or UPS shipping costs, PACER fees and other Court Clerk filing fees and long distance travel, such as Amtrak for travel to Albany.  Haroules Decl. at ¶ 77 Exhs. T through Z.  Plaintiffs' requested costs do not include all costs actually incurred by Plaintiffs' Counsel in the relevant time period.  Although entitled to full reimbursement of costs

associated with their representation, Plaintiffs' Counsel has elected to not seek payment for local travel costs, telephone calls, cell phone data charges, photocopying, legal research or meals. *Id*. at ¶ 78; Mueller Decl. at ¶ 55; *see Rozell*, 576 F. Supp. 2d at 547; *Morris v. Eversley*, 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2004) (awarding "any additional costs ordinarily charged in the particular legal marketplace"). Plaintiffs' costs are modest and provide further support for the reasonableness of Plaintiffs' requested fee award.

**F.      Plaintiffs Are Entitled To Recover "Fees On Fees" For This Fee Petition**

Lastly, reasonable fees are routinely awarded for work and time spent on preparing and litigating fee applications. *See Quaratino v. Tiffany & Co.*, 166 F.3d 422, 427-28 (2d Cir. 1999); *see also Barbour*, 788 F. Supp. 2d at 223. Thus, Plaintiffs' Counsel also seeks to recover their reasonable fees incurred in helping to prepare the Fee Application and supporting documentation, including the fees of its counsel KBT, which drafted the Fee Application. *See* Haroules Decl. ¶ ¶ 72-73, Exh. D. Given their limited resources, NYLPI and NYCLU requested that KBT prepare the Fee Application, for which KBT is also entitled to a reasonable recovery at its prevailing commercial litigation billing rates. This is particularly true where defendants for the first time since 1993 refused to voluntarily negotiate this fee request. Abrams Decl. at ¶10.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Counsel respectfully contends that they are entitled to recovery of the full amount sought for their attorneys' fees and costs.

Dated: February 20, 2019
New York, New York

Respectfully submitted,

KASOWITZ BENSON TORRES LLP

By: /s/ David J. Abrams_____
David J. Abrams
Deva Roberts

1633 Broadway
New York, New York 10019
(212) 506-1700

NEW YORK CIVIL LIBERTIES UNION
FOUNDATION

By:_____
Beth Haroules

125 Broad Street, 19th floor
New York, NY 10004
Tel: (212) 607-3325
Fax: (212) 607-3318

NEW YORK LAWYERS FOR THE PUBLIC
INTEREST

By:_____
Roberta Mueller

151 West 30th Street, 11th Floor
New York, NY 10001
Tel: (212) 244-4664
Fax: (212) 244-4570

*Attorneys for Plaintiffs*

## CONCLUSION

For the foregoing reasons, Plaintiffs' Counsel respectfully contends that they are entitled to

recovery of the full amount sought for their attorneys' fees and costs.

Dated: February 20, 2019
      New York, New York

                      Respectfully submitted,

                      KASOWITZ BENSON TORRES LLP

                      By:_____
                            David J. Abrams
                            Deva Roberts

                      1633 Broadway
                      New York, New York 10019
                      (212) 506-1700

                      NEW YORK CIVIL LIBERTIES UNION
                      FOUNDATION

                      By:_____
                            Beth Haroules

                      125 Broad Street, 19th floor
                      New York, NY 10004
                      Tel: (212) 607-3325
                      Fax: (212) 607-3318

                      NEW YORK LAWYERS FOR THE PUBLIC
                      INTEREST

                      By:_____
                            Roberta Mueller

                      151 West 30th Street, 11th Floor
                      New York, NY 10001
                      Tel: (212) 244-4664
                      Fax: (212) 244-4570

                      *Attorneys for Plaintiffs*

## CONCLUSION

For the foregoing reasons, Plaintiffs' Counsel respectfully contends that they are entitled to recovery of the full amount sought for their attorneys' fees and costs.

Dated: February 20, 2019
New York, New York

Respectfully submitted,

KASOWITZ BENSON TORRES LLP

By:_____
David J. Abrams
Deva Roberts

1633 Broadway
New York, New York 10019
(212) 506-1700

NEW YORK CIVIL LIBERTIES UNION
FOUNDATION

By:_____
Beth Haroules

125 Broad Street, 19th floor
New York, NY 10004
Tel: (212) 607-3325
Fax: (212) 607-3318

NEW YORK LAWYERS FOR THE PUBLIC
INTEREST

By:_____
Roberta Mueller

151 West 30th Street, 11th Floor
New York, NY 10001
Tel: (212) 244-4664
Fax: (212) 244-4570

*Attorneys for Plaintiffs*