UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
NEW YORK ASSOCIATION FOR
RETARDED CHILDREN et al.,

                              Plaintiffs,

        - against -

ANDREW M. CUOMO, et al.,

                            Defendants.
-------------------------------------------------------------- x

**MEMORANDUM & ORDER**

72 CV 356 (RJD)
72 CV 357 (RJD)

DEARIE, District Judge:

      This motion for attorneys' fees and costs arises out of a 1972 class action ("Willowbrook Litigation") related to the deprivation of basic rights, including unclean and unsafe living conditions, of individuals with intellectual and developmental disabilities housed at the Willowbrook State Developmental Center in Staten Island, New York. The litigation resulted in a 1975 Consent Judgment, which was replaced in 1993 by a Permanent Injunction ("Injunction"). The Injunction provided for, *inter alia*, legal services for members of the Willowbrook class, compliance monitoring, and attorneys' fees and costs related to monitoring and enforcement of certain terms of the Injunction. After years of resolving fee disputes without court intervention, the parties have reached an unprecedented impasse. Plaintiffs' counsel now bring the instant motion for attorneys' fees and costs dating back to 2012, which the Court grants, subject to a number of modifications discussed herein.

## RELEVANT BACKGROUND

I.    Monitoring and Enforcement Under the Injunction

The facts surrounding the Willowbrook Litigation and the conditions that prompted the litigation are set forth in a number of prior opinions and the Court assumes familiarity with those facts. New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136 (2d Cir. 1983); New York State Ass'n for Retarded Children, Inc. v. Carey, 596 F.2d 27 (2d Cir. 1979); New York State Ass'n for Retarded Children, Inc. v. Carey, 393 F. Supp. 715 (E.D.N.Y. 1975); New York State Ass'n for Retarded Children, Inc. v. Rockefeller, 357 F. Supp. 752 (E.D.N.Y. 1973). Relevant to this motion, the Injunction requires that the New York Office for People with Developmental Disabilities ("OPWDD") monitor the Willowbrook class and ensure class members receive certain Injunction-mandated services. Plaintiffs' counsel are responsible for auditing OPWDD services targeting the Willowbrook class, compiling observed systemic deficiencies and approving the OPWDD's plan to correct those deficiencies. However, attempts to resolve whether the OPWDD has, in fact, complied with its obligation to create and implement plans to correct systemic deficiencies have been unsuccessful for over 20 years. Haroules Decl., ECF No. 127, ¶ 20, n.22; Baer Decl., ECF No. 131, ¶ 19-20. Whereas the OPWDD takes the position that systemic deficiencies have been adequately corrected and Plaintiffs' counsels' monitoring and enforcement role must be dramatically reduced, if not entirely eliminated, Baer Decl. ECF No. 131, ¶¶ 18, 20, n.26, Plaintiffs' counsel maintains the OPWDD has yet to achieve full compliance with the terms of the Injunction and as a result counsel must continue to perform critical monitoring and enforcement activities, Haroules Decl., ECF No. 127, ¶ 20, n.22. Plaintiffs' counsel continues to request attorneys' fees related to those endeavors.

Plaintiffs' counsel also perform an advocacy role for the Willowbrook class pursuant to the terms of the Injunction. Counsel ensure class members receive notice with respect to any changes in placement or programming and review grievances and incident reporting with respect to Injunction compliance. Plaintiffs' counsel consists of attorneys from the New York Civil Liberties Union ("NYCLU") and New York Lawyers for the Public Interest ("NYLPI"). NYPLI "takes the lead role on due process notices" and NYCLU "addresses protection from harm issues," "guardianship matters, end of life issues, medical consent issues…research initiatives" as well as "regulatory initiatives, legislative enactments and programmatic initiatives issued by the New York State Department of Health and/or the…OPWDD." Haroules Decl., ECF No. 127, ¶¶ 19, 54. NYCLU has represented Plaintiffs since the litigation began in 1972. NYLPI has worked with NYCLU as co-counsel since 1995. Though the parties dispute the precise number of class members remaining, at the time of the 1993 Injunction Plaintiffs' counsel represented close to 6,000 class members; a little over one-third of those class members are alive today. Haroules Decl., ECF No. 127, ¶ 8; Baer Decl., ECF No. 131, ¶ 12.

II.     Attorneys' Fee Disputes

For many years the parties resolved attorneys' fee disputes without court intervention. A review of the electronically-available docket going back to 1997 reveals close to 20 so-ordered stipulations and orders of settlement related to attorneys' fees and costs. Defendants, while noting the shrinking size of the Willowbrook class, at this juncture have nevertheless been willing to reimburse Plaintiffs' counsel for an expansive monitoring and consultation role with OPWDD for over 15 years. Now, however, Defendants claim Plaintiffs' counsel (i) bill at excessive hourly rates, (ii) engage in vague and duplicative block billing, and (iii) submit fee demands with unwarranted delay, undermining Defendants attempts to accurately verify time

3

entries. Defendants ask the Court to order Plaintiffs' counsel submit fee demands at regular intervals—at least every six months. Defendants also assert that fee demands should have been made and should now be made in accordance with Fed. R. Civ. P. 23(h), which requires any notice of motion for fees be "directed to class members in a reasonable manner," in the Court's discretion, such that class members have an opportunity to object. Plaintiffs, on the other hand, move for attorneys' fees from 2012 through 2019 claiming that counsel performs "critical post-judgment work," requiring sophistication, skill and in-depth institutional knowledge and note that Fed. R. Civ. P. 23(h) is inapplicable because counsels' fee applications are not related to a large class financial settlement in which counsel would be entitled to a portion of settlement funds available to class members. Specifically, Plaintiffs request attorneys' fees and costs in the amounts of $3,789,386.39 for NYCLU, $124,140 for NYLPI and $88,137.50 for the law firm of Kasowitz, Benson and Torres LLP ("the Kasowitz firm"), retained specifically to prepare Plaintiffs' fee application. The requested fee award is based on Southern District of New York ("SDNY") hourly billing rates between $525 and $600 for attorneys from NYCLU and NYLPI and between $300 and $925 for attorneys from the Kasowitz firm, and accounts for almost 7,000 hours of time over seven years, including over 200 hours spent preparing this fee application.

## LEGAL STANDARD

In evaluating a motion for attorneys' fees, the Court is tasked with determining a "reasonable," fee, taking into account reasonable hourly rates multiplied by the "reasonable" number of hours worked. Millea v. Metro-N. R.R. Co., 658 F.3d 154, 166-67 (2d Cir. 2011). This amount, referred to as the "lodestar," represents a presumptively reasonable fee. Id. at 166. However, "the lodestar is not always conclusive" and may be adjusted in the Court's discretion. Id. The party seeking the fee award bears the burden of submitting sufficient evidence to

4

support the hourly rates and hours billed, Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Hugo v. Kimso Apartments, LLC, 852 F. Supp. 2d 281, 298 (E.D.N.Y. 2012), and though the amount requested must be supported by evidence, the Court is not required to perform extensive calculations over the entire billing record in awarding attorneys' fees. Instead, the Court is permitted to "use estimates in calculating and allocating an attorney's time," and so long as such an estimate is explained and supported by law and fact, the Court's discretion will not be disturbed. Fox v. Vice, 563 U.S. 826, 838-39 (2011); Sleepy's LLC v. Select Comfort Wholesale Corp., 909 F.3d 519, 533 (2d Cir. 2018).

**DISCUSSION**

I.     Billing Rates

    *A. Legal Standard*

        To determine an attorney's appropriate billing rate, the Second Circuit applies the "forum rule." The forum rule articulates a rebuttable presumption that "courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009). However, "[a] district court may use an out-of-district hourly rate—or some rate in between the out-of-district rate sought and the rates charged by local attorneys—in calculating a presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates" assuming that a "reasonable, paying client would in most cases hire counsel…whose rates are consistent with those charged locally." McDaniel v. County of Schenectady, 595 F.3d 411, 420-21 (2d Cir. 2010) (citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 493 F.3d 110, 191 (2d Cir. 2007)).

To rebut the forum rule presumption, the moving party must make a "particularized showing" demonstrating "the likelihood that the use of in-district counsel would have produced a substantially inferior result," McDaniel, 595 F.3d at 421 n.6, because, for example, "the case required special expertise beyond the competence of forum district law firms," Dzugas-Smith v. Southold Union Free School Dist., 2010 WL 3852003, at *3 (E.D.N.Y. Sept. 27, 2010) (citing Simmons v. New York City Transit Auth., 575 F.3d 170, 175 (2d Cir. 2008)); see also Vilkhu v. City of New York, 372 F. App'x 222, 224 (2d Cir. 2010) ("a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result").

The hourly billing rate must also take into account (i) the complexity and difficulty of the case, (ii) the available expertise and capacity of the client's other counsel (if any), (iii) the resources required to effectively prosecute the case (taking into account the resources marshaled by opposing counsel, without endorsing scorched earth tactics), (iv) the timing demands of the case, (v) whether an attorney might have an interest, independent of her client, in achieving the ends of the litigation or might initiate the representation herself, (vi) whether an attorney might have initially acted pro bono, such that the client might be aware the attorney expected low or non-existent remuneration, and (vii) other returns, including reputation, that an attorney might expect from the representation. Arbor Hill, 522 F.3d at 184. Ultimately the Court must "set a fee which is adequate to attract competent counsel but which do[es] not produce windfalls" for the prevailing party. Restivo v. Nassau County, 2015 WL 7734100, at *3 (E.D.N.Y. Nov. 30, 2015) (citing Blum v. Stenson, 465 U.S. 886, 893-94 (1984)). Most recently, fees in complex cases in the Eastern District have ranged between $400-$600 per hour for partners, $200-$400 per hour for associates and $75-100 per hour for paralegals. Trustees of Northeast Carpenters Health,

Pension, Annuity, Apprenticeship & Labor Management Cooperation Funds v. Cali Enterprises, Inc., 2019 WL 2076784, at *5 (E.D.N.Y. May 20, 2019); Nat'l Environmental Safety Co., Inc. v. Katz, 2019 WL 1994049, at *2 (E.D.N.Y. May 6, 2019); Reiter v. Maxi-Aids, Inc., 2019 WL 1641306, at *4 (E.D.N.Y. Apr. 16, 2019); Schwartz v. United States Drug Enforcement Administration, 2019 WL 1299192, at *9 (E.D.N.Y. Mar. 1, 2019); McLaughlin v. IDT Energy, 2018 WL 3642627, at *17 (E.D.N.Y. July 30, 2018).

### B. Application

Plaintiffs' counsel argues the Court should apply prevailing market rates from the Southern District of New York ("SDNY") because "[i]t would be difficult, if not impossible, to find a law firm or group of lawyers practicing solely within the Eastern District with the combination of constitutional expertise, monitoring experience, and resources to have prosecuted a disability law case as complex and demanding as this action, and to have continued to monitor the Permanent Injunction for so long with such skill and expertise." Pls.' Br., ECF No. 126, at 12. Defendants, however, contend that the forum rule must be applied because Plaintiffs' counsel has not overcome the "strong" forum rule presumption by "persuasively establish[ing]" out-of-district counsel was "likely" to "produce a substantially better net result." Defs.' Br., ECF No. 130, at 9. For example, Defendants point out that at present, this case "involves very little litigation and largely consists of corresponding and conferring with OPWDD and multiple other monitors of the Willowbrook class" and Plaintiffs' contention that no in-district law firm or public interest organization could effectively monitor this case is "mere conjecture" insufficient to overcome the forum rule presumption. Id. at 9-10; see also ECF No. 139 (characterizing counsels' work as "routine, post-judgment monitoring"). The Court agrees Plaintiffs have not overcome the "strong presumption" in favor of the forum rule and thus Eastern District rates

provide the appropriate benchmark for calculating Plaintiffs' attorneys' fees and costs; however, the Court finds that counsel is nevertheless entitled to in-district rates at the higher end of the spectrum and sufficient to reflect counsels' significant experience and institutional knowledge.

### 1. The Forum Rule

Plaintiffs' counsel, indisputably, has significant skill and expertise with respect to the subject matter of this litigation and is uniquely positioned to effectively and efficiently enforce the Injunction and monitor the OPWDD's own enforcement efforts. However, the Court must also account for the nature of the work counsel has performed during the period *covered by the fee application*, not the considerably more extensive work counsel performed decades ago, including overseeing the development of the OPWDD infrastructure that exists today. These factors, which are essentially ignored by Plaintiffs, sway in favor of the forum rule presumption because they undermine Plaintiffs' position that their work is so specialized and unique, no in-district attorney is qualified to do it.

Two recent attorneys' fee applications from this District awarding out-of-district rates illustrate the "difficult standard" confronting attorneys who wish to rebut the forum rule presumption. In Kindle v. Dejana, 308 F. Supp. 3d 698 (E.D.N.Y. 2018), the court declined to apply the forum rule to an ERISA class action and instead permitted higher SDNY billing rates. The Court noted that the Plaintiff "attached Declarations from practicing attorneys attesting to the fact that ERISA class action litigation involving breach of fiduciary duty and prohibited transaction claims related to the sale of an Employee Stock Ownership Plan ("ESOP") constitutes a specialized practice area requiring unique expertise" for which "there are currently no practitioners within the Eastern District," as well as a declaration from an Eastern District attorney stating that "if a prospective client contacted [him] about a potential ERISA class action

arising from an ESOP transaction, I would refer the prospective client to an out-of-district firm" because "to [his] knowledge, no plaintiff-side attorney in this district has experience or expertise in ESOP class actions." Id. at 711-12.

Similarly, in Restivo v. Nassau County, 2015 WL 7734100 (E.D.N.Y. Nov. 30, 2015), a section 1983 suit arising out of a wrongful murder conviction, the Court permitted a fee award applying SDNY billing rates because the case was "exceedingly arduous and complex, involving extensive expert analysis and presentation of DNA evidence spanning eight years and two trials" and even defense counsel acknowledged that the Plaintiff's firm "might have *held a monopoly* on DNA law" and that "no lawyers with primary offices in the Eastern District of New York have obtained a successful jury verdict in a section 1983 wrongful conviction suit as [Plaintiff's counsel] did here." Id. at *2-3 (emphasis added).

Despite their expertise and institutional knowledge, Plaintiffs' counsel in this case has not made the requisite showing to rebut the forum rule presumption. Instead, Plaintiffs do not provide "sufficient evidence" that *no* attorneys in this district possess such skill. See United States v. City of New York, 2013 WL 5542459, at *5 (E.D.N.Y. Aug. 30, 2013) (acknowledging "the difficulty of proving a negative" but nevertheless concluding Plaintiff-Intervenors had not made the requisite showing that "in-district counsel were unable or unwilling to take this case...without having made *any* contacts within the district"). Like United States v. City of New York, Plaintiffs' application at most shows that in-district counsel "might be harder to find," but that "is not enough to show that there is a complete dearth of such counsel." Id. (comparing to Harvey v. Home Savers Consulting Corp., 2011 WL 4377839, at *3-1 (E.D.N.Y. Aug. 12, 2011) where plaintiffs could overcome the forum rule presumption because the in-district legal advocacy organization "that initially brought the lawsuit determined that it had neither the

resources nor the experience to represent plaintiffs adequately"). <u>Compare</u> Maazel Decl., ECF No. 137, at 5 (noting it would be "extremely difficult" to find in-district counsel for this matter) <u>with</u> <u>Kindle</u>, 308 F. Supp. 3d at 711-12 (declining to apply forum rule presumption where declarations from practicing attorneys affirmed there were "*no practitioners* within the Eastern District" with required expertise (emphasis added)).

Moreover, Plaintiffs' counsel does not have "a monopoly" on disability-rights law like counsel in <u>Restivo</u>, nor has counsel shown that no Eastern District lawyer has secured a successful Permanent Injunction in an important civil rights case requiring prospective monitoring. <u>Compare with</u> <u>Equal Employment Opportunity Commission v. United Health Programs of American, Inc.</u>, 350 F. Supp. 3d 199 (E.D.N.Y. 2018) (following jury verdict finding an employer subjected class of employees to religious discrimination and hostile work environment in violation of Title VII, the court entered a permanent injunction, ordered compliance monitoring, including semi-annual compliance reports, and ultimately awarded attorneys' fees to Plaintiffs' counsel in accordance with Eastern District rates); <u>Nicholson v. Williams</u>, 2004 WL 4780498 (E.D.N.Y. Apr. 5, 2004) (awarding attorneys' fees, in line with "prevailing rates" in EDNY to lawyers who obtained preliminary injunction against Administration for Children's Services related to child welfare issues involving battered mothers). And, even if Plaintiffs' counsel did have such a "monopoly," counsel has not demonstrated that the nature of the work for which they now seek fees falls within that "monopoly" and is so "arduous and complex" that only they have the expertise and wherewithal to handle it. Indeed, counsels' work comprises predominately of correspondence and oversight—work that no doubt takes significant expertise and benefits from counsels' institutional knowledge—but not work that warrants a departure from Eastern District rates.

Vilkhu, 372 F. App'x at 224; Dzugas-Smith, 2010 WL 3852003, at *3; Nicholson, 2004 WL 4780498, at *11-12.

2. Billing Rates

Plaintiffs argue that even if the Court declines to award out-of-district rates, their requested hourly rates nevertheless fall within the accepted range of rates for the Eastern District, particularly in light of counsels' extensive experience and the complexity of this case. Defendants disagree, and argue for a substantial reduction in billing rates. Of course, both sides cherry pick case citations depending upon their "magic number. Compare Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay, 10-cv-2262, ECF No. 173 (E.D.N.Y. June 18, 2019) (highly experienced senior attorneys engaged in active, complex and protracted litigation with a plethora of discovery disputes and substantial motions practice) with Dowdell v. Imhof, 2012 WL 959474, at *2-3 (E.D.N.Y. Mar. 19, 2012) (section 1983 action applying attorneys' fees from 2010-2012). Plaintiffs request an hourly rate of $600 for Beth Haroules, an NYCLU attorney with over 30 years of experience who has worked on the Willowbrook Litigation since 1994, $525 for Lisa Laplace, an NYCLU attorney with close to 30 years of experience who has worked on the Willowbrook Litigation since 2005, $550 for Roberta Mueller, an NYLPI attorney with over 30 years of experience who has worked on the Willowbrook Litigation since 2001 and $150 for Suhali Mendez, an NYLPI paralegal with over 10 years of experience. Defendants counter with hourly rates of $375, $275, $325 and $0, respectively.

Viewed in light of prevailing market rates in this district for cases requiring comparable levels of experience and expertise, Plaintiffs' proposed rates are too high, and Defendants' counter is too low; however, the Court concludes that rates approaching Plaintiffs' proposal are

more appropriate in this case. On the one hand, even though the day-to-day tasks involved in this litigation are not exceedingly complex, that is largely due to the fact that they are performed by attorneys with significant experience who are able to capitalize on their institutional knowledge and efficiently execute Injunction enforcement and compliance tasks. Counsel should be compensated for that experience and knowledge. Nicholson, 2004 WL 4780498, at *12 (awarding fees while "remaining cognizant of the prevailing rates charged in [EDNY], yet recognizing the complexity and novelty of these cases as well as the expertise of the attorneys involved"). On the other hand, this kind of watershed civil rights litigation is the sort that "an attorney might have an interest (independent of that of his client) in," and thus "might have initially acted pro bono such that a client might be aware that the attorney expected low or non-existent remuneration." Arbor Hill, 522 F.3d at 184. Furthermore, a downward departure from Plaintiffs' requested rate is justified because the delay in submitting a fee application for hours billed over a *seven-year* period "is due in whole or in substantial part to the fault of the party seeking fees" and thus "there is no inequity in requiring [Plaintiffs'] counsel to bear the cost of delay" they caused. Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998).

Ultimately, counsels' subject-matter expertise and vast institutional knowledge persuade the Court that a billing rate on the higher end of the spectrum in this District is warranted, and counsels' independent interest in the litigation and delay in submitting a fee application only sway the pendulum marginally in Defendants' favor. Ms. Haroules is entitled to a $500 rate, Ms. Laplace is entitled to a $425 rate, Ms. Mueller is entitled to a $450 and Ms. Mendez is entitled to a $100 rate. These rates are consistent with those prevailing in this district for attorneys with similar experience, and reduced slightly to account for the delay, of Plaintiff's own creation, in requesting fees. See, e.g., Katz, 2019 WL 1994049, at *2; Scharff v. County of Nassau, 2016

WL 3166848, at *5 (E.D.N.Y. May 20, 2016); <u>D'Annunzio v. Ayken, Inc.</u>, 2015 WL 5308094, at *4 (E.D.N.Y. Sept. 10, 2015). <u>Compare with</u> <u>Cleanup North Brooklyn by Chantratanapichate v. Brooklyn Transfer LLC</u>, 373 F. Supp. 3d 398, 405 (E.D.N.Y. 2019) (awarding NYLPI attorney with *15 years* of relevant litigation experience $350 per hour and senior law firm partner with *30 years* of experience, but limited experience in case subject matter, $425 per hour).

II.    Number of Hours Billed

   *A. Legal Standard*

Attorneys applying for court-ordered compensation "must document the application with contemporaneous time records …specifying, for each attorney, the date, the hours expended, and the nature of the work done." <u>Miroglio S.P.A. v. Conway Stores, Inc.</u>, 629 F. Supp. 2d 307, 312 (S.D.N.Y. 2009) (citing <u>N.Y. State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1148 (2d Cir. 1983)). "The relevant issue…is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed a reasonable attorney would have engaged in similar time expenditures." <u>Grant v. Martinez</u>, 973 F.2d 96, 99 (2d Cir. 1992). The Court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." <u>Lunday v. City of Albany</u>, 42 F.3d 131, 134 (2d Cir. 1994).

To the extent the Court finds certain hours billed are "excessive, redundant or otherwise unnecessary," or where documentation supporting hours billed is "vague or incomplete," the fee award may be reduced accordingly. <u>Hensley</u>, 461 U.S. at 424; <u>Miroglio</u>, 629 F. Supp. 2d at 312. Vague entries may be subject to even more scrutiny when attorneys engage in block billing. Though not per se unreasonable, block billing is generally disfavored because it can "have a tendency to obfuscate the amount of time expended on distinct tasks and introduce an element of

vagueness into a fee application, making it difficult to determine if the reported hours are duplicative or unnecessary." Miroglio, 629 F. Supp. 2d at 313. In reducing a fee award "the court has discretion simply to deduct a reasonable percentage of the number hours claimed as a practical means of trimming fat from a fee application" rather than "set[ting] forth item-by-item findings concerning what may be countless objections to individual billing items." Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998); Lunday, 42 F.3d at 134.

    *B. Application*

    Plaintiffs seek compensation for approximately 6,700 hours of work between 2012 and 2019 performing monitoring and enforcement tasks on behalf of the Willowbrook class pursuant to the terms of the Injunction—6,400 hours of work performed by NYCLU and just under 300 hours of work performed by NYLPI. Plaintiffs contend these hours are reasonable in light of the directives set out by the Injunction, and that their supporting documentation is contemporaneous and of sufficient detail. Specifically, Plaintiffs note that in recent years, OPWDD, the state agency counsel are charged with monitoring, has seen a number of "highly experienced and knowledgeable staff" retire and experienced significant turnover. Pl. Br, ECF No. 126, at 22. Accordingly, Plaintiffs explain counsel are "repeatedly called upon" *by Defendants* "to educate new state employees and provider agencies on issues relating to Willowbrook entitlements and Plaintiffs' compliance rights" and counsel "have also been invited to comment on and/or craft regulatory and programmatic initiatives that are vital to OPWDD." Id. at 22-23. Defendants, on the other hand, claim counsels' billing entries (i) reflect work outside the scope of that contemplated by the Injunction, (ii) contain numerous duplicative time entries, (iii) are vague, and (iv) reflect inappropriate block billing practices. Defendants contend that these billing record deficiencies warrant a 40% across-the-board reduction in counsels' total billable hours.

Though the Court finds some deduction in billable hours is appropriate, a 40% deduction is not necessary. The Court addresses each of Defendants' quarrels with counsels' time entries in turn.

1. Nature of Work Performed by Counsel

Defendants claim Plaintiffs' counsel attempts to bill the state for any work "even tangentially relate[d] to their representations of the Willowbrook class, as well as activities and tasks that are simply not contemplated or required by the Permanent Injunction," including "attendance or participation in public conferences, webinars, and forums," "providing testimony and public comments on OPWDD initiatives and programs" and tasks "independently undertaken in an unsolicited effort to policy agency operations." Defs.' Opp. Br., ECF No. 130, at 16-17. Though Defendants include ample citations to counsels' billing records which it claims reference work falling outside the scope of the Injunction, Defendants do not explain why such work is inconsistent with the role of counsel envisioned by the Injunction. Plaintiffs claim counsels' billing records "reflect[] work done together with, or at the behest of, OPWDD." Pls.' Reply Br., ECF No. 133, at 9. To this end, Ms. Haroules submitted two detailed declarations describing recent changes to the OWPDD services delivery system and counsels' need to participate in briefings and submit comments related to those changes in order to ensure "that the entitlements of the Willowbrook class members are protected in whatever new system is developed." Haroules Reply Decl., ECF No. 134, ¶ 15. Moreover, Ms. Haroules explains that Defendants' attempt to take issue with Plaintiffs' efforts to "police agency operations" is improper because "[t]he entire structure of the Injunction vests Plaintiffs' Counsel with that obligation…insofar as the 'policing' related to the rights and entitlements of the Willowbrook class under the Injunction." Id. ¶ 16. Indeed, Ms. Haroules notes the Injunction obligates Defendants to provide "ongoing information sessions" to counsel to "monitor[] the development

15

and implementation of the plans to address systemic issues" and give counsel an opportunity to make suggestions. Id. ¶ 18.

Ultimately, this dispute bears on whether Plaintiffs' counsel has, as Defendants argue, overstayed their welcome to audit, monitor and enforce OPWDD's efforts to implement the terms of the Injunction. Notwithstanding numerous settlement attempts with respect to this issue, none have successfully resolved the status of Plaintiffs' counsels' audit work. However, that issue is not before the Court and the Court must instead determine whether counsels' billing entries reflect a reasonable amount of billable time in light of the actual litigation position between the parties from 2012 to 2019. Accordingly, Defendants' argument that counsels' hours must be reduced to reflect significant work performed outside the scope of the Injunction is unavailing, with one exception. Work providing comment and input on changes to OPWDD services that will affect the entitlements of the Willowbrook class and monitoring other OPWDD activities to ensure compliance with the Injunction fall squarely within the purview of the Injunction. However, the Court agrees that time spent attending certain "public conferences, webinars, and forums" is, in some cases, too tangentially related to Injunction monitoring and enforcement work, and therefore should not always be compensable. The Court will factor this deduction into its across-the-board deduction, discussed below.

### 2. Duplicative Billing Entries

Defendants also complain that Plaintiffs' counsel "billed an excessive amount of time for conferring with each other" without any "particularized explanation as to why these duplicative efforts were necessary" or otherwise "justify billing by multiple lawyers." Defs.' Opp. Br., ECF No. 130, at 18. However, Plaintiffs contend, and the Court agrees, that this matter has been staffed leanly, with only two attorneys from NYCLU and one attorney for NYLPI, reducing the

incidence of duplicative billing. Indeed, Courts often make fee reductions to reflect what billable hours *would have been* had the case been leanly staffed. Beastie Boys v. Monster Energy Co., 112 F. Supp. 3d 31, 57 (S.D.N.Y. 2015) (noting fee reductions are "common" "to reflect considerations of whether work performed was necessary, leanly staffed, or properly billed"). The fact that counsel communicated with each other regarding monitoring and enforcement work is not enough to warrant a deduction in hours for duplicative billing.

### 3. Vague Billing Entries

Defendants next argue that the "proliferation of vague billing entries" warrants a fee reduction and point to a number of entries referencing indecipherable abbreviations and acronyms and sparsely described activities and tasks. E.g., "review/comment KTPFCW agenda items," "reviewing state report and recommendations regarding CAG, VRB," and "call amongst plaintiffs counsel." Plaintiffs counter with an 11-page abbreviation and acronym key designed to translate the allegedly vague billing entries and insist that counsel does "not bill for every email we review or write, every phone call we take, or every time we speak with co-counsel, the Consumer Advisory Board…" going on to list a number of other stakeholders. Haroules Reply Decl. ¶ 42.

Plaintiffs' key only goes so far. The Court agrees that even with the key, a number of billing entries are too vague for the Court to ascertain whether counsels' time was reasonably spent. For instance, counsel cannot bill for a "call amongst plaintiffs' counsel" without identifying the nature and purpose of the call, nor can counsel bill for "review/comment materials" without specifying the materials or issues warranting review and comment. These vague entries do not plague all of Plaintiffs' billing records, but they do appear enough times to warrant a deduction in hours. Relatedly, the vague nature of a number of billing entries do not

make it possible for the Court to confirm that, for example, Ms. Haroules "bill[s] largely for transactions that consume some significant amount of time," as she states in her declaration. Haroules Reply Decl. ¶ 43. A modest deduction is warranted to account for counsels' vague billing entries.

### 4. Block Billing

Finally, Defendants ask the Court to "reduce fees based on NYCLU's rampant use of block billing" which "render it impossible to determine the reasonableness of the time expended on any individual task." Defs.' Opp. Br., ECF No. 130, at 20-21. Plaintiffs respond that their block-billed entries "amply satisfy standards established in the Second Circuit" and note that in the majority of instances where counsel submitted a single entry for more than five hours on a particular day, OPWDD should be able to understand how those hours were spent because counsel was either "(i) engaged in meetings or court proceedings with Defendants, (ii) covering court proceedings where OPWDD declined to participate to ensure Willowbrook class members' rights and entitlements were protected, or (iii) engaged in drafting court pleadings, regulatory comments and demand letters, all of which were shared with or directed at OPWDD." Haroules Reply Decl., ECF No. 134, ¶¶ 42-45.

Block billing is disfavored because it can cloud the court's ability to assess whether counsels' time expenditures were reasonable. However, in this case, counsels' entries often list out discrete tasks, even if those individual tasks might, at times, be vaguely described. Though all of counsels' tasks for a particular day are contained within a single billing entry, the Court concludes that the tasks are broken out within that entry to a sufficient degree, and thus counsels' block billing practices do not warrant a fee reduction.

Overall, a 10% deduction of Plaintiffs' requested fees for monitoring and enforcement work is appropriate in light of the incidence of vague billing entries and, relatedly, billing for activities that are not clearly germane to the enforcement and monitoring activities contemplated by the Injunction. This results in a fee award of $2,773,152.90 to NYCLU and $104,283 to NYLPI. See Appendix A.

III.  Costs

NYCLU requests costs in the amount of $3,985.70 for some, but not all, of the costs incurred over the last seven years, including conference calls, shipping, PACER and other court fees, as well as certain travel expenses. Pls.' Br., ECF No. 126, at 23-24. However, Defendants argue that because Plaintiffs "merely provide[] general ledger reports of expenses allegedly incurred," such reports do not constitute adequate documentation to establish whether a charge is reasonable. Defendants would prefer Plaintiffs submit the underlying invoices. Defs.' Opp. Br., ECF No. 130, at 21-22.

Notwithstanding the fact that Defendants may have accepted general ledger reports as acceptable documentation of costs in the past, this Circuit requires the party seeking costs provide "adequate documentation of costs incurred." John v. Demaio, 2016 WL 7469862, at *12 (E.D.N.Y. Sept. 29, 2016) (declining to award certain costs where "no receipts have been submitted"). Courts are also permitted to deduct requested costs where documentation is insufficient. Rotella v. Bd. of Educ. of New York, 2002 WL 59106, at *5 (E.D.N.Y. Jan. 17, 2002) (reducing costs by 50% where plaintiffs billed for "copying costs" "courier costs," "long distance telephone" and "postage costs" in lump sums without "provid[ing] further breakdowns, descriptions or even dates indicating how and when these costs were incurred").

Here, Plaintiffs have at least provided the dates on which expenses were incurred rather than the lump sum format submitted in Rotella. Theoretically, one could cross-verify these costs with Plaintiffs' billing records to confirm their legitimacy. The Court finds that a 10% deduction in costs is warranted: though these costs are not impossible to verify, in light of the minimal supporting documentation and the difficulty associated with verifying the requested costs, some deduction is appropriate. NYCLU may thus recover costs totaling $3,587.13. See Appendix A.

IV.     "Fees on Fees"

Plaintiffs also request "fees on fees"—fees for the time spent preparing and litigating this fee application—to the tune of $120,680. Specifically, Plaintiffs request $88,137.50 for the Kasowitz firm, retained, on a pro bono basis, for the sole purpose of preparing this application, and $32,542.50 for attorneys from NYCLU and NYLPI for a total of 227 attorney hours. Defendants contend that the requested fees must be dramatically reduced "to no more than 30 hours, which is the maximum number generally approved for preparing fee applications." Def. Br., ECF No. 130, at 24.

A. Legal Standard

Plaintiffs are entitled to "a reasonable fee for preparing and defending" a fee application where "underlying costs are allowed." Hines v. City of Albany, 862 F.3d 215, 223 (2d Cir. 2017); Weyant v. Okst, 198 F.3d 311, 316 (2d Cir. 1999). Indeed, "[i]f an attorney is required to expend time litigating his fee claim, yet may not be compensated for that time, the attorney's effective rate for all the hours expended on the case will be correspondingly decreased" and "[s]uch a result would not comport with the purpose behind most statutory fee authorizations." Gagne v. Maher, 594 F.2d 336, 344 (2d Cir. 1979), aff'd 448 U.S. 122 (1980); see also M.D. v. New York City Dep't of Education, 2018 WL 4853032, at *1 (S.D.N.Y. Oct. 5, 2018) (allowing

"fees on fees" because "a culpable defendant should not be allowed to cause the erosion of fees awarded to the plaintiff for time spent in obtaining the favorable judgment by requiring additional time to be spent thereafter without compensation"). "To hold otherwise would permit a deep pocket losing party to dissipate the incentive provided by an award through recalcitrance." Hines, 862 F.3d at 222. However, "if the fee claims are exorbitant, or if the time devoted to presenting the fee petition is unnecessarily high, the judge may refuse further compensation or grant it sparingly." Cruceta v. City of New York, 2012 WL 2885113, at *7 (E.D.N.Y. Feb.7, 2012) (citing Valley Disposal Inc. v. Central Vermont Solid Waste Mgmt. Dist., 71 F.3d 1053, 1059 (2d Cir. 1995)).

In general, hourly billing rates for fees on fees litigation should reflect the billing rates of the underlying fee litigation. See, e.g., M.D., 2018 WL 4853032, at *1 (citing C.D. v. Minisink Valley Cent. Sch. Dist., 2018 WL 3769972, at *11 (S.D.N.Y. Aug. 9, 2018) (awarding fees on fees but at the same reduced rate as used in the underlying fee award)); United States ex rel. Joseph F. Tommasino, P.A., PhD v. Guida, 2017 WL 878587, at *9 (E.D.N.Y. Mar. 6, 2017). And, as in ascertaining the appropriate number of hours billed in the underlying litigation, the number of hours spent preparing the fee application cannot be "excessive, redundant, or otherwise unnecessary" taking into account "the unique facts of [the] case." Payne v. Kirkland, 2017 WL 5952707, at *4 (S.D.N.Y. Nov. 30, 2017) (citing Hensley, 461 U.S. at 434; Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)).

*B. Application*

The hourly rates requested by counsel in this case and number of hours spent preparing the fee application far surpass the realm the of reasonableness. First, the hourly rates must be reduced to "match the rates that apply in the underlying action," and second, the number of hours

21

billed reveals innumerable redundancies and excessive billing practices, particularly by the Kasowitz firm. Guida, 2017 WL 878587, at *9 (E.D.N.Y. Mar. 6, 2017). However, even though the rates and hours must be substantially reduced, a reduction to no more than 30 hours—the billable time Defendants contend is "reasonable"—is not necessary. This particular fee petition included a number of lengthy declarations, recounting the detailed history of this litigation and explaining the many facets of Plaintiffs' work with the Willowbrook class. Therefore, even though the hours billed by the Kasowitz firm and Plaintiffs' counsel in litigating this fee petition are undoubtedly too high, reducing billable time to 30 hours flat would ignore certain complex realities of this litigation. The fees on fees award must strike the appropriate balance between the fact that, as a general matter, preparing a fee petition is a relatively straightforward, "ministerial" exercise, Johnson v. City of New York, 2016 WL 590457, at *7 (E.D.N.Y. Feb. 11, 2016), and the lengthy history and multifaceted nature of this case, which Plaintiffs were required to describe in justifying their request for fees.

1. Hourly Rates

Plaintiffs' fees on fees application seeks payment for hours billed by one partner, Mr. Abrams, with just under thirty years of experience (28.3 hours at $925 per hour), one senior-level associate, Ms. Roberts, (48.7 hours at $500 per hour), one mid-level associate, Ms. Cusick, (92.6 hours at $400 per hour), and one junior-level associate, Mr. Intravatola, (1.9 hours at $300 per hour). In order to "match the rates" the Court has calculated for the "underlying action," Mr. Abrams is entitled to a $500 hourly rate, Ms. Roberts is entitled to a $325 rate, Ms. Cusick is entitled to a $300 rate, and Mr. Intravalota is entitled to a $250 rate. The hourly rates for Ms. Haroules and Ms. Mueller will be the same as they are in the underlying action—$500 and $450, respectively. These fees are similar to those recently awarded in a variety of cases litigated in

this district and appropriately reflect the experience of counsel as well as the relatively straightforward, albeit tedious, work involved in preparing a fee application. See, e.g., Katz, 2019 1994049, at *2 (awarding $500-600 hourly rate for partners and $300 hourly rate for associates litigating a motion for default judgment in a breach of contract case); McLaughlin, 2018 WL 3642627, at *17 (awarding $500 for partners with 15-30 years of experience, $350 for senior associates, $300 for mid-level associates and $250 for junior associates in class action relating to false and deceptive business practices of large electricity provider).

2. Hours Billed by the Kasowitz Firm in Preparing the Fee Application

With respect to the number of hours billed in preparing the fee application, the amount reported by the Kasowitz firm is well above the norm and replete with examples of redundant billing, inefficiencies and overstaffing. Most notably, the billing records for Ms. Roberts and Ms. Cusick reveal a number of overlapping and vague time entries and reflect duplicative work. To the extent Ms. Roberts and Ms. Cusick performed different work or focused on different sections of the fee petition, it would be impossible to discern from the vague time entries submitted.

For example, on February 5, 2019 Ms. Roberts billed 5.4 hours to "review and revise draft fee petition" and *the very same day* Ms. Cusick billed 7.5 hours to "draft and revise fee petition." Again, on February 7, 2019, Ms. Roberts billed 4.2 hours to "revise fee petition" and Ms. Cusick billed 5.1 hours to "revise sections of fee petition." And, on February 11, 2019, Ms. Roberts billed 1.2 hours to "review comments and edits made by co-counsel" while Ms. Cusick *also* billed 1.2 hours to "review co-counsel's edits." Though Ms. Roberts, who is several years Ms. Cusick's senior, billed relatively fewer hours, there are nevertheless too many instances of duplicative work in the billing records. The Court thus finds that a 50% hours reduction across Ms. Roberts and Ms. Cusick's total hours is appropriate. See, e.g., Beastie Boys, 112 F. Supp. at

57 (fee reduction warranted to account for "instances in which more than one lawyer was assigned to a task without evident justification"); Tucker v. City of New York, 704 F. Supp. 2d 347, 355 (S.D.N.Y. 2010) ("Using multiple attorneys in a simple case…poses the serious potential—fully realized in this instance—for duplication of work or overstaffing"); Nat'l Helicopter Corp. of Am. V. City of N.Y., 1999 WL 562031, at *1 (S.D.N.Y. July 30, 1999) ("It is also apparent…that in certain respects, these attorneys either duplicated each other's efforts or performed services unnecessary to this litigation"); Kim v. Dial Serv. Int'l, Inc., 1997 WL 458783, at *19 (S.D.N.Y. Aug. 11, 1997) (reducing lodestar "to reflect duplicative work by the two plaintiff's attorneys" because "[m]any of the entries show that both attorneys did the same work at the same time when only one attorney's time was necessary"). Reducing Ms. Roberts's 48.70 hours by 50% results in 24.35 hours at $325 per hour and totaling $7,913.75. Reducing Ms. Cusick's 92.60 hours billed by 50% results in 46.3 hours at $300 per hour and totaling $13,890. See Appendix A.

In general, Mr. Abrams' billing records reflect fewer redundancies; however, there are several instances of duplicative billing warranting a reduction in hours. For instance, on the same day Ms. Roberts apparently spent 5.4 hours to "review and revise the draft fee petition" and Ms. Cusick spent 7.5 hours to "draft and revise fee petition," Mr. Abrams also spent 1.7 hours to "review and revise" the petition. The following day, Mr. Abrams spent an hour reviewing brief revisions whereas Ms. Roberts spent 4.6 hours and Ms. Cusick spent 5.5 hours performing the same task. Though the Court appreciates the need for supervising attorneys to review important court submissions, these time entries reveal clear overbilling. Accordingly, Mr. Abrams's hours will be reduced by 40%, resulting in 16.98 hours at $500 an hour totaling $8,490. See Appendix A.

24

Mr. Intravatola billed 1.3 hours and .6 hours over the course of two consecutive days researching "attorneys' fees in recent EDNY cases." On at least one of those days, Ms. Cusick also spent 1.5 hours performing legal research on the fee petition. The Court concludes that Plaintiffs are not entitled to recover fees for Mr. Intravatola's limited research. Not only was Mr. Intravatola not admitted to practice at the time he performed such work, but based on the vague billing entries, his work was duplicative of the work performed by Ms. Cusick.

### 3. Hours Billed by NYCLU and NYLPI in Preparing the Fee Application

Ms. Haroules spent 53.1 hours and Ms. Mueller spent 14.4 hours on this fee application. Overall, Ms. Mueller's time entries relating to the fee application reflect sound billing judgment, specifically tailored to reviewing her own declaration and some additional, limited time reviewing the brief as a whole. No deduction in hours is warranted for Ms. Mueller and she is thus entitled to her requested 14.4 hours at $450 per hour, totaling $6,480.

Ms. Haroules submitted several lengthy declarations in support of this fee application which surely required substantial work and review, capitalizing on her significant institutional knowledge as reflected by her billing records. However, Ms. Haroules's records also reflect a number of vague, block-billed entries for "attention to fee app," making it difficult for the Court to determine how Ms. Haroules's review differed from that of her NYLPI colleague Ms. Mueller or Mr. Abrams of the Kasowitz firm. Accordingly, the Court finds that a 30% deduction in Ms. Haroules's hours is warranted to account for large number of vague entries and entries overlapping with work performed by the Kasowitz senior attorneys on the fee application. Reducing Ms. Haroules's hours by 30% yields 37.17 hours at $500 per hour, totaling $18,585.

The Kasowitz firm is therefore awarded $30,293.75 in fees for preparing the fee

application, NYLPI is awarded $6,480 and NYCLU is awarded $18,585 for their work in

preparing the fee application. See Appendix A.

V.      Future Fee Demands

Finally, Defendants ask the Court to "direct Plaintiffs' Counsel to submit fee demands to

Defendants' Counsel bi-annually, in June and December each year," and "[i]n compliance with

Rule 23(h)(1)…provide notice of this and future motions for attorneys' fees and costs to class

members." Defs.' Br., ECF No. 130, at 24-25. In response, Plaintiffs argue Fed. R. Civ. P. 23

does not require notice of a fee application related to post-judgment monitoring and enforcement

be provided to class members because the fee request is not tied to any funds that would

otherwise be made available to class members. Pl. Reply Br., ECF No. 133, at 9-10. With

respect to the timing of Plaintiffs fee demands, Plaintiff notes it would be amenable to an annual

submission of fee demands but contends that bi-annual fee demands would constitute an

excessive administrative burden. Id. at 9, n.14.

First, the Court agrees that notice to class members of this and any future motions for

attorneys' fees is, as a practical matter, not necessary. As Plaintiffs note, because attorneys' fees

in this case are paid out of the general budget of New York state, an award of attorneys' fees

would not "implicate the rights and entitlements of the Willowbrook class members." Pls.'

Reply Br., ECF No. 133, at 10. Indeed, the Willowbrook class members were recipients of

injunctive relief, and "[u]nlike monetary relief, which must be affirmatively distributed in

aggregate litigations in a fair and equitable way" taking discrete slices out of a single settlement

pie, the injunctive relief available here is a different animal and notice would likely be an

unnecessary and costly burden. Cf. Andrews v. Blick Art materials, LLC, 286 F. Supp. 3d 365,

372, (Dec. 21, 2017). However, the plain language of Fed. R. Civ. P. 23(h) is not permissive with respect to class notice. The Rule specifically says "[n]otice of the motion [for attorneys' fees] *must be served* on all parties and, for motions by class counsel, *directed* to class members in a reasonable manner." Fed. R. Civ. P. 23(h) (emphasis added). Accordingly, because class counsel here seeks attorneys' fees, notice to class members is required pursuant to Fed. R. Civ. P. 23(h) in a "reasonable manner."

Plaintiff argues that should the Court conclude notice is necessary, OPWDD should be required to pay for any associated costs because "OPWDD has sole possession of all relevant information about the class necessary to effectuate notice." Pls.' Reply Br. ECF No. 133, at 10. Waiting for OPWDD to transfer the pertinent notice information to counsel would be inefficient and unnecessarily costly. Thus, requiring OPWDD to pay for and provide such notice would effectuate notice in a "reasonable manner" as required by Rule 23(h).

Second, submitting a request for fees dating back over seven years is clearly unworkable, inefficient, and ripe for conflict. Nevertheless, the Court is sympathetic to the administrative burdens associated with submitting fee requests at too-frequent intervals. Ultimately, Plaintiffs' counsels' priority must be monitoring and enforcing compliance with the Injunction for the benefit of their clients, and this priority cannot take a regular backseat to fee disputes. Moving forward, Plaintiffs' counsel are required to submit fee demands promptly on an annual basis. The parties may work jointly to settle on deadlines, and to the extent Plaintiffs' counsel engages in additional unreasonable delay, Defendants may seek relief from this Court.

## CONCLUSION

Plaintiffs' motion for attorneys' fees is granted, subject to the modifications discussed above and reflected in Appendix A. NYCLU counsel is awarded $2,791,737.90 and NYLPI

counsel is awarded $110,763 for monitoring and enforcement work as well as the time spent preparing this fee application. NYCLU may recover $3,587.13 in costs. The Kasowitz firm is awarded $30,293.75 for its work preparing the fee application. Moving forward, with the assistance of OPWDD, class members must be provided notice of any fee application pursuant to Fed. R. Civ. P. 23(h), and Plaintiffs' counsel is required to submit fee requests on an annual basis.

SO ORDERED.

Dated: Brooklyn, New York
     July 22, 2019

                                    s/Raymond J. Dearie

                                    RAYMOND J. DEARIE
                                    United States District Judge